[Civ. No. 5544.   Third Appellate District.—June 5, 1936.]

FLORENCE BOYES, as Administratrix, etc., Respondent, v. HARRY D. EVANS, Appellant.

474

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Appellant.

Foltz, Rendon & Wallace for Respondent.

THOMPSON, J.—The defendant, Harry D. Evans, has appealed from a judgment which was rendered against him in a suit for damages for personal injuries received by the deceased in an unprovoked assault upon him. The cause was tried by the court sitting without a jury. The court found that the appellant, without cause, violently beat and struck the deceased, knocking him to the floor, and that he kicked him upon his thigh, sides and back with such force as to severely bruise and injure him, causing grievous pain and suffering and resulting in the impairing of his health. Judgment was accordingly rendered against the appellant for special damages in the sum of $136, general damages in the sum of $500 and punitive damages in the further sum of $1,000. Upon motion for a new trial the punitive damages were reduced to the sum of $500; the total damages were fixed at the sum of $1136 and costs of suit, and the motion for a new trial was thereupon denied. From this judgment the defendant Harry D. Evans has appealed.

It is contended the findings and judgment are not supported by the evidence for the reason that the plaintiff's testimony is inherently improbable; that the court erred in admitting and rejecting testimony during the course of the trial and that the record contains no evidence of malice in fact on the part of the appellant to support the award of exemplary damages.

After reading the entire record we are convinced the plaintiff's evidence is not inherently improbable. In fact,

certain circumstances strongly support the findings of the court to the effect that Lim Sing, the plaintiff's intestate, received from the appellant a brutal beating and kicking which may have resulted in his subsequent death. The evidence is irreconcilably conflicting, but unless the plaintiff's evidence appears on its face to be inherently improbable, this court has no power to disturb the judgment on that account. The trial judge is a man of high character and wide judicial experience. He listened to the evidence and observed the witnesses on the stand. It is exclusively his province to judge of the weight and sufficiency of the evidence, and the credibility of witnesses. We have no disposition to disturb his judgment in those matters.

While the testimony is hopelessly conflicting, there is evidence to support the following statement of facts: Lim Sing was a slight, little Chinese weighing only 114 pounds and being 62 years of age. He had lived in America for thirty-eight years. He seems to have been an industrious, harmless old man, whose occupation was that of a cook during most of his residence in this country. He lived at number 115 East Sonora Street in Stockton, in the vicinity of which for many years he had conducted the Yokohama Restaurant, in company with two partners. The restaurant was generously patronized by Chinese customers. He did the cooking for that restaurant, for which he was paid $75 a month. His countrymen testified they had never heard of his smoking or dealing in opium or any of its derivatives. It is evident he was a law-abiding person. While it does appear that a man by the name of Lim Sing in company with a dozen other Chinese was arrested in an opium den in Oakland about a year before the assault which is involved in this case occurred, the charge was dismissed against them. He denied that he was ever arrested at Oakland on an opium charge or at all, and substantial evidence was adduced to prove an alibi on his part to the effect that he was then in Stockton attending to his regular business. At least that is the only charge which was attempted to be proved against him in spite of his many years of residence in California and in the city of Stockton.

Lee Soon ran a cigar stand at the corner near the Yokohama Restaurant, where Lim Sing was accustomed to buy cigarettes. Lee Soon lived with his wife and several children in the second story of a building just across the street from

his cigar stand. The appellant was a large man much heavier and stronger than Lim Sing. He was an inspector employed by the California Narcotic Board, working under the supervision of Mr. Walker. In company with Mr. George H. Hoffman, another narcotic inspector, the appellant went to Stockton to investigate alleged violations of the narcotic laws. He claims to have met a Chinese janitor of the International Hotel of Stockton about August 25, 1934, whom he characterized as a smoker and a peddler of "dope", who, under a threat of arrest, pointed out Lim Sing as a "big peddler of dope". It is significant that the appellant did not remember the janitor's name; he made no effort to apprehend the janitor for violating the law; he never afterwards saw him, and he did not know where he could be located. It does not appear that the janitor told Evans that Lim Sing was a well-known Chinese restaurant man in that city for many years, or where he lived. Evans made no effort to procure a warrant either to arrest Lim Sing or to search his premises for narcotics.

Shortly after noon on August 27, 1934, Evans and Hoffman were going down El Dorado Street in Stockton in the vicinity of the Yokohama Restaurant. They were not provided with search warrants and do not claim they were searching for any particular person. Lim Sing had just finished eating his lunch and was crossing the street to purchase some cigarettes at the cigar stand of his friend Lee Soon. As he entered the cigar stand, Evans and Hoffman noticed him and followed after him. Evans seized the Chinese as he reached the counter and charged him with throwing some mysterious package back of the counter, but made no effort to search for it. He then shook Lim Sing and accused him of having opium in his possession. The frightened and helpless Chinese denied that he possessed or ever used opium or any other narcotics. He repeatedly exclaimed "wassa-malla, wassa-malla, me no have". Evans, however, searched his person, turning his pockets inside-out and scattering his money about the floor. Then, on suspicion that he lived in the house across the street, Evans rushed him over there and entered the rooms where Lee Soon and his family lived. Finding no evidence of the presence of narcotics, he hurried the Chinese back to the cigar store, and seeing his money still scattered about the floor, he ordered him to pick it

up. Evans then demanded to know where Lim Sing lived. The Chinese produced a water receipt and said "I show." It was marked number 115 East Sonora Street. The two inspectors then rushed the little Chinese off for his home, hustling him up the outside stairway and forcing him to unlock the door and admit them. They shoved him into the room and demanded that he show them where he kept his dope. Vainly he protested that he had no opium. Evans roughly shoved and hauled the Chinese about, striking him repeatedly and threatening and cursing him violently. Having searched the rooms without finding any trace of narcotics, Evans demanded that he should get his key and unlock a trunk which was there upon the floor. While Lim Sing was protesting and tremblingly trying to unlock the trunk, Evans struck and kicked him repeatedly until he fell upon the floor, where he lay crying and screaming for help. Several neighbors heard his cries for aid. One Americanized Chinese boy nicknamed George Young, who worked at a neighboring gas station, heard the cries and hastened to Lim Sing's room. As he looked in through the partly open doorway he saw Evans violently kicking the prostrate body of the Chinese. Young shouted, "What is the matter?" Evans then rushed out and seizing Young, he pulled him into the room and shoved him down on a bed, saying in a threatening manner, "Don't get up, . . . sit down, you s——of——a——b, . . . if you get up, I going to kill you." The boy says that while he sat there he heard Evans curse Lim Sing and saw him kick him twice. Being unable to unlock the trunk, Lim Sing says that the inspectors broke it open. They finally ordered Young to leave the room. He went away. No opium or narcotics of any sort were found. Several witnesses testified that they saw the two inspectors leaving the room about 1 o'clock.

Within an hour or two after the beating, Dr. Edwin Frost was called to treat Lim Sing's wounds. He testified that he found him helplessly lying in bed, unable to get up; that he was complaining of severe pain in his right side; that he found bruises on his right hip and side, one of which was the size of his hand; that there were also bruises over the lower ribs and on the right elbow, with "a lot of swelling". There were no broken bones or abrasions of the flesh. Lim Sing was unable to move his leg without great pain. He was

suffering from severe nervous shock. He was first treated by the doctor and then sent to the hospital, where he remained for about a week under the care of Dr. Frost. When he came out of the hospital he had lost about ten pounds in weight. Several Chinese witnesses said that he was suffering from nervous shock and that he seemed to be mentally deranged. He moaned and cried out in the night-time and was terrorized when he saw an officer. He died March 15, 1936, after this suit was tried and the judgment had been rendered. He was a witness at the trial.

It is true that both inspectors denied they searched Lim Sing at the cigar stand or elsewhere, or that either of them cursed, struck, kicked or roughly handled him. They did admit that they went with him to his room and "looked around" for dope, but found none. In spite of the denial that either of the inspectors had searched the person of Lim Sing for opium, Mr. Evans admitted on cross-examination conducted under the provisions of section 2055 of the Code of Civil Procedure as follows: "Q. His money didn't fall on the floor there at all? A. Yes, his money fell on the floor. Q. You didn't put your hands on him at all down in that store? A. We searched him there, yes. Q. What? A. We searched him. Q. How did you search him? A. Looked in his pockets. Q. How did you look in his pockets? A. Just reached in with our hands."

On cross-examination of Mr. Evans, for the purpose of impeachment, he was asked and answered the following questions as follows, which were read from a previous preliminary examination of another case, with reference to the kicking and beating of Lim Sing in his room: "Q. Did you use some force on him there? A. No, not that I know of. Q. You didn't get him down, he wasn't on the floor when you were kicking him while you were there? A. No sir, I don't think so."

The admissions of Mr. Evans concerning the episode in the cigar stand, his examination of the rooms of Lee Soon, the hustling of Lim Sing over to his rooms, and the search of those rooms, all without a warrant and without legal authorization to do so; the outcries of the Chinese which were heard by several countrymen and brought one boy to his aid, and the fact that almost immediately after the inspectors had left his rooms, Lim Sing was found by the doctor who

was called, injured and helpless with numerous severe contusions and bruises just where he said he had been kicked, may be accounted for in no other reasonable way than that which is related by the Chinese. Indeed, it seems improbable that his injuries and bruises were inflicted in any other manner. The evidence of Mr. Evans' unwarranted beating and kicking of the Chinese seems very convincing. These facts amply support the findings and judgment.

A narcotic inspector or peace officer who commits an unprovoked assault and battery on an individual without cause in apprehending him without a warrant on suspicion or upon mere information that the accused may be guilty of a misdemeanor becomes a trespasser and is liable as such for the injuries inflicted. Ordinarily an officer has no legal right to attempt to make an arrest for a misdemeanor on suspicion or even on mere information of another person without first procuring a warrant therefor. (5 C. J. 639, sec. 37; Pen. Code, sec. 149.) The furnishing of narcotics is a mere misdemeanor. (Pen. Code, sec. 307; Narcotic Act of California, Stats. 1929, p. 380, and amendments, Deering's Supp. of 1933, p. 1985, Act 5323.)

It was not error for the court to sustain an objection on the part of the plaintiff to a question propounded to Lim Sing on cross-examination, as follows: "Q. Did you ever authorize Lum Chin Fong, in Oakland, to settle this case for you?" In support of this question counsel for the defendants stated that, "It has come to our attention that this man, or rather a member of the Lum family, of which this man is a member, has approached the Narcotic Division for the purpose, as stated to them, he would dismiss this suit if the Narcotic Division would waive two felony complaints against two members of the Lum family." The question to which the objection was sustained is incompetent and the answer was properly excluded. There is no proof and no offer to prove that Lim Sing belonged to the Lum family. The entire offer was based upon hearsay evidence. A mere offer to compromise the suit and dismiss it in consideration of the "waiving of criminal complaints against two members of the Lum family" would not affect the merits of this suit. It is a well-established rule of law that it is not permissible to show that a party to litigation has offered to compromise the case. The rule not only excludes the offer

to compromise but also all negotiations with relation thereto. (22 C. J. 308, sec. 347.)

It was harmless to deny defendants' motion to strike out a statement made by the witness, Fong Duck, who went to the room of Lim Sing immediately after the beating occurred and found him lying on the floor crying in pain, to the effect that "He (Lim Sing) said a couple of officers knock him down and kicked him." This statement was merely cumulative. Lim Sing was a witness at the trial and testified to exactly that assertion. The statement may be deemed to have been too remote to constitute a part of the *res gestae*, but it was harmless.

Likewise, it was harmless to sustain plaintiff's objection to the question addressed to Lim Sing on cross-examination, as follows: "Have you changed your mind as to the amount of damages you are entitled to since the filing of this complaint?" There is no merit in this question. The complaint prays for general damages in the sum of $25,000. This includes compensation for pain and suffering, which element is necessarily uncertain and largely within the discretion of the court or jury. It is a well-known fact that counsel often inserts in a pleading the maximum figures claimed for general damages in a suit involving pain and suffering, which figures are sometimes extravagant. The fact that a client verifies a complaint containing such figures, even though they be deemed to be extravagant, throws no substantial light on the veracity of the client.

The amount of general damages which was allowed is not excessive. We are of the opinion the award was very conservative.

Nor is the sum allowed as punitive damages erroneous or excessive. The first court allowed $1,000 as exemplary damages, but, on motion for a new trial, reduced that sum to $500. That sum is not out of proportion to the amount of general damages which was allowed. The amount to be allowed as punitive damages is largely within the discretion of the judge or jury, and will not be disturbed unless it is grossly excessive or appears to have been the result of passion or prejudice. (8 Cal. Jur., p. 866, sec. 109; 8 R. C. L., p. 680, sec. 218.) It is necessary that punitive damages must be supported by substantial evidence that the accused person was guilty of "oppression, fraud, or malice, express or implied". (Civ. Code, sec. 3294.) The present record contains

ample evidence of oppression and implied malice. If the beating and kicking of an individual on the part of an officer who wrongfully searches his person and home without a warrant on mere suspicion created by an unreliable person who apparently had an ulterior motive in pointing out the victim to the officer as a user or peddler of narcotics, does not constitute oppression, it would be difficult to find a case warranting that conclusion on the part of a trial judge. Moreover, it is a reasonable assumption, from the circumstances of this case, that the appellant discredited the statements of Lim Sing. This resentment was probably caused by race prejudice against an inoffensive Chinese. It is therefore evident that the unprovoked attack was prompted by malice. The cursing and beating of Lim Sing under such circumstances furnish substantial evidence of malice on the part of the appellant.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 3, 1936.