[Civ. No. 12903.   Second Dist., Div. One.   Apr. 2, 1942.]

REFORD APPIER, a Minor, etc., Respondent, v. WALTER
C. HAYES, Appellant.

Ray L. Chesebro, City Attorney, W. Jos. McFarland,
Assistant City Attorney, and Wm. U. Handy, Deputy City
Attorney, for Appellant.

Robert W. Ryan and Grover Bossert for Respondent.

YORK, P. J.—This appeal from a judgment in favor of the minor plaintiff, in an action for damages for assault and battery brought against defendant police officer, is presented to this court upon a bill of exceptions and appellant's opening brief, it being contended (1) that the court erred in failing to find on the issue of necessary force, in view of the fact that appellant alleged in his answer to the complaint that he used such force and no more than was necessary to effect respondent's arrest; (2) that the court erred in the rejection of certain evidence offered by appellant; (3) that the evidence is insufficient to support the findings as to the amount of damages awarded and that said damages are excessive.

The complaint alleged that the defendant police officer employed by the city of Los Angeles "did willfully and unlawfully assault the plaintiff and strike him on and about the face and body with his fists and with a blackjack or 'billy' . . .", and asked for general damages in the sum of $5,000, punitive damages in the sum of $5,000, and special damages (1) $300 for dental service treating injuries to teeth, and (2) $300 for services of a physician and surgeon in treating an injured nose.

The answer, among other things, alleged that appellant placed respondent under arrest "and without subjecting plaintiff to any more restraint or force than necessary for his arrest and detention, proceeded to conduct plaintiff to the police car nearby and plaintiff thereupon resisted arrest, whereupon this defendant used such force—and no more—as was necessary to restrain plaintiff."

The trial court sitting without a jury found "1. That on or about the 4th day of November, 1939, in the city of Los Angeles, California, the defendant Walter C. Hayes did assault the plaintiff and strike him on or about the face.

"2. That as a result of said assault, plaintiff's face was bruised and he sustained injury to his teeth, to-wit: the lower left, central and lateral incisors were broken lingually and approximately 1/3 of their incisal surface was also fractured. The lower right lateral incisor was broken laterally and incisally. That as a result of said damage to plaintiff's teeth it was necessary that he engage the services of a dentist to treat the same. That the reasonable value of the said dental

treatment is the sum of $125 and that plaintiff has sustained special damage in that sum.

"3. That as a result of said assault plaintiff sustained general damages in the sum of $625.00."

Accordingly, judgment was entered for the sum of $750. Thereafter appellant's motion for a new trial was denied provided respondent agreed in writing to a reduction of the amount of the judgment from $750 to $500. Respondent on July 29, 1940 filed his written agreement to such reduction. Appellant's principal assignment of error is failure of the court to find "on the issue of whether the force used was in excess of that necessary to arrest the plaintiff."

An examination of the record herein reveals that on the evening of November 4, 1939, respondent Appier, 19 years of age, with several other young men drove into a parking lot located at the rear of some business houses facing on Santa Monica Boulevard in West Los Angeles. This lot provided free parking space to patrons of a motion picture theater in the neighborhood. An argument ensued between John Ware, the parking attendant, and Raymond Coffman, respondent's cousin, who was the driver of the car in which respondent was then seated, as to where the car should be parked. Meanwhile, appellant and another police officer drove into the parking lot and appellant handed Coffman a traffic ticket for unlawfully crossing a pedestrian zone just before driving into the parking lot. Ware requested the officers to settle the argument he was having with the boys, but the officers refused, saying it was not a criminal offense and they could not interfere. Respondent and Coffman became angry at Ware's statements to the police officers, and told him if he would come out into the alley they would "work him over," whereupon Ware left the parking lot and proceeded to the entrance of the neighborhood theatre. When the officers and the boys arrived at the theatre a few moments later, Ware requested plaintiff's arrest.

With respect to what then took place, respondent testified in brief that appellant took him by the left shoulder and right arm, twisting the right arm behind respondent and pushed him in front of him to the police car which had proceeded up the alley to the parking lot; that he went with the officer willingly; that when they reached the police car appellant walked respondent directly into the car and held him

there while he (appellant) opened the rear door with his left hand, whereupon he turned respondent around and hit him in the mouth and nose with his fist, all in one motion, and then pushed him into the car; that appellant then climbed into the car and beat respondent about the face, head and body and hit him in the mouth with a blackjack or some other hard instrument, cracking the enamel on his teeth; that the blow struck outside the car caused respondent's nose to bleed; that appellant continued to beat respondent continuously until they arrived at the police station which was approximately two blocks away; that upon arriving there he was conducted to the washroom where he washed blood from his face; that he was covered with blood from head to foot; that he remained in the washroom three or four minutes during which time his nose stopped bleeding; that his face was swollen and bruised and he thought his nose was broken; that the jail physician who examined him said his nose was only bruised and would be all right; that respondent's underlip was cut and he was bleeding at the mouth; that his lips and mouth were swollen out of shape for several days; that he was arrested Saturday night, November 4, 1939, and was released on Monday, the 6th, no complaint having been filed against him by Ware, the parking lot attendant; that on November 8th, he went to a dentist to have his teeth examined.

The dentist who examined him testified that he found that respondent's lower right central and right lateral incisors were broken lingually, approximately one-third of their lingual surface being broken away, leaving a ragged edge on the teeth so that the tongue was slightly chafed; that in his opinion the enamel had been broken recently and could have been broken at any time within the week, otherwise they would have been stained; by reason of the breakage of the enamel the teeth were not in occlusion; that there would be a slight space between the upper and lower teeth when brought together; that the reasonable value for putting a porcelain cover over the back of the teeth where the enamel was broken was $125; that by using gold instead of porcelain the cost would be $30; that the gold would last as long and would be every bit as good as the porcelain, there being no difference between the effectiveness of the two materials; that the life of the teeth would be the same and the only difference in appearance would be that a thin gold line would be visible on the edge

of the two injured teeth. This witness further testified that when he examined respondent on November 8, 1939, he did not recall that respondent's lips were swollen, nor did he see any bruises on his lips, but that the gums were slightly inflamed at the roots of the two injured teeth.

Several witnesses testified that they saw appellant strike respondent as he put him in the car; that respondent was not resisting the officer; that they did not see what happened inside the car.

John Ware, the parking lot attendant, testified that "when first arrested plaintiff objected and as defendant started to take him up the alley he held back; that defendant pushed him along; that the witness followed them about fifteen feet behind; that when they got to the car plaintiff turned around and faced defendant; that there was a moment's pause, and then defendant hit plaintiff on the side of the face and pushed him into the car; that no blows were struck in the car."

Appellant testified he told respondent he was under arrest and thereupon took hold of him by the right arm; that "plaintiff jerked away and defendant then grabbed his arm tighter and twisted the right arm behind him; that there was a distance of some 60 to 70 feet from where plaintiff was arrested on the sidewalk to the police car in the parking lot up the alley; that the plaintiff resisted by holding back and 'wrestling with' him; that plaintiff was not fighting but he was not going willingly; that the witness walked the plaintiff right into the car and held him there until he had opened the rear door of the car with his left hand; that he then let go of the plaintiff and told him to get into the car; that the plaintiff instead of getting into the car turned, and with his back to the car, faced the defendant, doubled up his fists and put up his hands as though to strike a blow; that he believed that if he did not hit the plaintiff that he (the plaintiff) would hit him (the defendant); that defendant thereupon hit plaintiff a short, sharp blow on the side of the mouth and nose with the 'heel' of his open hand; that at the same time he pushed plaintiff into the car where he landed across the seat 'on his ribs and rump'; that the witness then got into the car; that he did not strike the plaintiff after he got into the car; that he was busy getting back his wind."

The officer further testified that when respondent threw up his fists as though to strike him, the witness hit the plain-

tiff not only in order to protect himself, but because he believed such force was necessary to effect the arrest; that there was a large group of men in the vicinity of the police car; that he believed them to be friends of respondent and that if the arrest was not made quickly there would be a free-for-all fight.

The several officers who saw respondent when he was brought into the police station testified to the effect that there was no blood on respondent's clothes; that respondent had been drinking; that his face was not bruised, cut or disfigured in any way; that his appearance was normal, and that he complained of no injury except that to his nose. The police surgeon at the West Los Angeles Station testified that he examined respondent on the night of November 4, 1939, and found his nose was bruised but not otherwise injured; that he observed no other injuries to the respondent's face and that respondent complained of no other injuries; that he did not examine respondent for alcoholism.

Upon these facts, the trial court made the findings of fact heretofore recited, to the effect that appellant "did assault the plaintiff and strike him on or about the face." While it is true the answer alleged that appellant used only such force as was necessary to place respondent under arrest, and the trial court failed to adopt findings in that regard, such omission is harmless. Since the court found that appellant "did assault the plaintiff," a finding on the issue presented by the affirmative defense set up in the answer would necessarily have been adverse to appellant.

"It is established law that even though the court fails to adopt findings on material issues involved in the case, the judgment will not be reversed on that account provided the adoption of such omitted findings would not require the rendering of a different judgment from that which was rendered." (*Strauch* v. *Bieloh,* 16 Cal. App. (2d) 278, 282 [60 P. (2d) 582], and cases there cited.)

An examination of the evidence discloses that the findings of fact and the judgment are supported thereby, and that nothing has been shown which would warrant the conclusion that the result was a miscarriage of justice.

The trial court properly rejected evidence of the reputation of the neighborhood in which the arrest was made and of the persons who habitually congregated there, it having been stipulated that there was no evidence that respondent

was at any time connected with such persons or "gangs of young ruffians" who congregated in the neighborhood.

In the absence of a showing of passion or prejudice on the part of the trier of the facts, an award of damages will not be disturbed. The amount of the judgment is not excessive if the testimony of respondent is to be believed.

For the reasons stated, the judgment is affirmed; the appeal from the order denying motion for new trial is dismissed.

Doran, J., and White, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 28, 1942.