[Civ. No. 26660.   Second Dist., Div. Four.   Apr. 16, 1963.]

JESSE JONES, JR., a Minor, etc., Plaintiff and Appellant, v. CITY OF LOS ANGELES, Defendant and Respondent.

Edgar A. Nathan for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, Victor P. Spero and William B. Burge, Deputy City Attorneys, for Defendant and Respondent.

BURKE, P. J.—Sovereign immunity from civil liability for torts committed by a public entity is involved in this appeal.

The Supreme Court, in *Muskopf* v. *Corning Hospital District* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], abolished the doctrine of governmental immunity in this state for torts for which its agents are liable. As a result of such decision, and because of its far-reaching effects, the Legislature adopted moratorium legislation (Stats. 1961, ch. 1404) reenacting such doctrine of immunity, and suspending the effect of the *Muskopf* decision until the 91st day after adjournment of the 1963 session. Unless further legislation is enacted the *Muskopf* decision will remain effective, abrogating sovereign immunity and establishing governmental liability for torts for which its agents are liable.

In the instant case an action was filed by plaintiff against the City of Los Angeles and two of its police officers for damages caused by alleged assault and battery of plaintiff by the police officers. The defendant city demurred to the complaint upon the ground that the cause of action was barred by section 22.3 of the Civil Code. This section is part of the moratorium legislation before mentioned. The demurrer was sustained; no amended complaint was filed; a motion to dismiss was granted and judgment entered for defendant city. Plaintiff appeals therefrom.

Plaintiff's cause of action arose on September 17, 1960, the date of the alleged injuries. This date was prior to the decision in the *Muskopf* case, but was after the date of the acts upon which the *Muskopf* claim was based. The *Muskopf* judgment became final February 27, 1961. In support of its judgment the trial court reasoned in part in a memorandum opinion filed prior to the decision in *Corning Hospital District* v. *Superior Court* (1962) 57 Cal.2d 488 [20 Cal.Rptr. 621, 370 P.2d 325], that the law reimposed by section 22.3 was that which was in existence when plaintiff's action arose —namely, that the government was immune from such tort liability. Therefore no cause of action existed in plaintiff against the city.

Plaintiff contends to the contrary. He asserts the *Muskopf* decision is authority for the proposition that a cause of action existed in plaintiff for his injuries at the time of their occurrence; that such cause of action was a vested right of which he could not be constitutionally deprived by subsequently enacted legislation. A review of the *Muskopf* decision and particularly of subsequent holdings of the Supreme Court in

*Corning Hospital District* v. *Superior Court, supra,* supports the contentions of plaintiff. ■ There is no specific statute immunizing defendant city from acts of the nature herein alleged. The theory of sovereign immunity, distinguishing between governmental and proprietary acts, in the absence of statutory pronouncement, is abrogated by the *Muskopf* decision and wherever a tort is committed by a public employee within the scope of his employment for which he would be responsible, the city is responsible whether or not the act is done in a governmental or in a proprietary capacity. The moratorium legislation suspends the effect of this decision but it does not abolish the cause of action. (*Flournoy* v. *State of California* (1962) 57 Cal.2d 497 [20 Cal.Rptr. 627, 370 P.2d 331]; *Corning Hospital District* v. *Superior Court, supra,* 57 Cal.2d 488.)

■ Defendant city argues two additional points on appeal that were not specifically raised by demurrer in the trial court, namely: (1) apart from governmental immunity, the acts of the police officers in assaulting plaintiff, if committed as alleged, were ultra vires; and (2) such acts would not be within the scope of the officers' employment. Accordingly, the city could not be held liable on the theory of *respondeat superior.*

Such construction is untenable. In the case of *Fields* v. *Sanders* (1947) 29 Cal.2d 834, 839 [180 P.2d 684, 172 A.L.R. 525], involving an assault and battery by an employee whereby the employer as principal was held liable, it is said, quoting from *Andrews* v. *Seidner* (1942) 49 Cal.App.2d 427, 430 [121 P.2d 863]:

" 'Responsibility of the principal results from acts so committed even though they be contrary to the principal's explicit instructions or otherwise unauthorized, or malicious or willful. In considering whether an unauthorized wrongful act of an agent is attributable to his principal, we cannot look to the nature of such act alone to see whether it was committed in and as a part of the transaction of the principal's business, but we must consider as well the activity of the agent on behalf of the principal in connection with which the act was committed. The inquiry is not whether the wrongful act itself was authorized but whether it was committed in the course of a series of acts of the agent which were authorized by the principal. Of course, where the agent, for however brief a space of time, has ceased to serve his principal, he alone is responsible for his acts during the period of such cessation. But the fact that the questioned act was unauthorized or, if wrongful, that it

was not committed in order to further the interests of the principal, will not show such a departure from the service of the principal as will absolve the latter if the act was committed while the agent was still occupying himself with the principal's business within the scope of his employment. Support for these statements, with full citation and discussion of authorities will be found in *Johnson* v. *Monson* (1920) 183 Cal. 149 [190 P. 635]; *Ruppe* v. *City of Los Angeles* (1921) 186 Cal. 400 [199 P. 496]; *Hiroshima* v. *Pacific Gas & Elec. Co.* (1936) 18 Cal.App.2d 24 [63 P.2d 340]; *Stansell* v. *Safeway Stores, Inc.* (1941) 44 Cal.App.2d 822 [113 P.2d 264].' ''

In *Ruppe* v. *City of Los Angeles* (1921) *supra*, 186 Cal. 400, 401, an employee of the city, engaged as a metersetter, was sent to set meters in a building. In order to force his way into a certain portion of the building where he was to install meters, it was alleged he assaulted plaintiff, inflicting injuries. The court stated that the city's position that the assault was not shown to have been authorized by the city, " . . . that, in fact, the evidence shows without contradiction that it was contrary to [its employee's] express instructions'' was to no avail. The court further declared (p. 402), ''It is, however, wholly immaterial whether or not the assault was authorized by the city, or was committed by [the employee] in violation of his instructions. It is plain enough that it was committed by him in the course of doing that which he had been sent to the building by the city to do and in furtherance of its doing; that it was, in other words, an act done by him in the course of his employment.''

The city seeks to distinguish the acts of a police officer from the acts of other employees, stating that the former's duties ''are prescribed by law and in the exercise thereof they are public officers and not employees or agents of the City of their appointment.'' (Citing *Logan* v. *Shields* (1923) 190 Cal. 661 [214 P. 45]; *Noble* v. *City of Palo Alto* (1928) 89 Cal.App. 47 [264 P. 529].)

The city maintains that an analogous situation is the nonliability of the chief of police for wrongful acts of his subordinates not done at his direction. In such cases the relationship of *respondeat superior* between himself and his subordinates does not apply. The latter are viewed as public servants and not in the private service of the chief of police. (*Michel* v. *Smith* (1922) 188 Cal. 199 [205 P. 113].)

Similar contentions were raised without success in *Davis* v. *Kendrick* (1959) 52 Cal.2d 517 [341 P.2d 673], an action for

damages from an assault and battery committed by a defendant policeman while engaged in his duties as a member of a police department. The court declared (p. 519): "Defendant relies on decisions holding that an officer, as distinguished from a mere employee, exercises a part of the sovereign power of the state and that policemen, in view of their powers and duties, have the status of public officers. [Citations.]" The court then refers to the same cases relied on by the city before this court and others, saying, "These cases, however, must be considered in the light of the problems there involved, and none of them dealt with charter provisions like those under consideration here. The fact that a policeman may be deemed a public officer for some purposes is not decisive of our problem, which is whether a policeman is an officer of the city within the meaning of sections 363 and 376 of the charter [pertaining to filing claims]." And at pages 518-519, "Under common law policemen and other peace officers are not immune from liability for wrongful acts causing personal injury or death [citation]...."

The judgment is reversed.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied May 1, 1963, and respondent's petition for a hearing by the Supreme Court was denied June 12, 1963.