[Civ. No. 24199.   First Dist., Div. Four.   June 30, 1967.]

ROY ARTHUR SCRUGGS, Plaintiff and Respondent, **v.** B. HAYNES et al., Defendants and Appellants.

257

Leonard Putnam, City Attorney, and Robert G. Austin, Deputy City Attorney, for Defendants and Appellants.

Wise, Kilpatrick & Clayton and George E. Wise for Plaintiff and Respondent.

RATTIGAN, J.—Action for damages for assault and battery committed by appellant B. Haynes while acting in the

course and scope of his employment as a police officer of appellant city. After a nonjury trial, the court entered judgment against the city and Haynes in the amount of $12,000 in compensatory damages and against Haynes alone in the amount of $5,000 as exemplary damages. Both appeal from the judgment.

At an early morning hour on May 18, 1962, appellant Haynes and a fellow officer, Gordon Owens, were on duty together as officers in the police department of appellant city. Officer Haynes had been a member of the department for eight years, Owens for two months. Patrolling an area of Long Beach in a police car, they observed and pursued two automobiles moving at an "excessive" speed, one closely following the other. The rear car collided with the other at an intersection, whereupon Officer Haynes showed the police car's red light. Both automobiles turned into a parking lot and stopped.

Respondent, plaintiff below, was the driver of the first vehicle. Mrs. Frankie McPherson, its owner, was in the car, seated with respondent on the front seat. The second vehicle was driven by Jack Neal, respondent's friend and Mrs. McPherson's brother-in-law. The trio had spent the evening together, and were on their way to Neal's home. Officer Haynes pulled into the parking lot behind the two cars. Both officers alighted from the police car. Haynes walked up to respondent, who had stepped from the McPherson automobile. The officer and respondent had a brief conversation, of which their testimony differed. Then a scuffle ensued at the other car, between Officer Owens and Jack Neal, and Haynes went to assist Owens.

Respondent followed Officer Haynes, extended his hand and started to say "Wait a minute." According to his testimony, respondent knew that Neal was recovering from an injury and he hoped to dissuade the officers from hurting Neal. Officer Haynes grabbed respondent's extended arm and held it in an arm lock from which respondent spun away. Haynes grabbed the arm again and kicked respondent's feet from under him. Respondent fell to the ground on his back, Haynes on top of him.

In his testimony at the trial, respondent said he could not remember what happened when he was on the ground. Mrs. McPherson testified that one of the officers held him and the other "stomped" him with his foot. Neal testified that he, Neal, was preoccupied with the other officer and did not observe respondent's fate at the hands of Haynes. Haynes

himself testified that he pinioned respondent's left hand with his (Haynes') knee and attempted to restrain respondent's right arm. Failing to restrain the arm, he struck respondent "hard" with his fist, twice on the head and once in the abdomen, until respondent said "I quit." Then he rolled respondent over on his stomach and handcuffed his wrists behind his back. The officers then took Neal and respondent, both handcuffed, to the police station.

It does not appear that either officer made a formal arrest of respondent at any time, in the sense of making the statements called for in appropriate circumstances by section 841 of the Penal Code. Respondent testified that neither officer, at any time, said that he was under arrest. Officer Haynes testified that, when he was subduing respondent, he was attempting to place him in custody. Both officers testified that respondent was not drunk and had not been charged with drunkenness or with a traffic violation for his conduct while driving the McPherson automobile. Jack Neal testified that he, Neal, was booked for disturbing the peace, to which charge he pleaded guilty; he did not testify concerning an arrest of respondent.

Respondent was booked at the police station at 2:45 a.m. on May 18. Documentary evidence of the event—referred to as a "booking slip"—was produced in evidence. The "booking slip," however, appears to be a police receipt for plaintiff's property, and does not indicate either an arrest or a charge. Respondent was released from jail the following afternoon, but apparently was never prosecuted on any charge.

Several witnesses differed concerning respondent's physical condition after the events in the parking lot. The two officers testified that he did not complain of pain and that his face was not notably disfigured during the booking process at the police station. Several photographs, however, and medical evidence, demonstrate graphically to the contrary. The photographs include a police "booking photograph" of respondent, made in mug shot format—and indicating no specific arrest charge—at 6:40 a.m. on May 18, and several colored snapshots made later that day. Without exception, the pictures indicate that he had received a brutal beating. Both his eyes were swollen shut or virtually so, and his face was covered with welts and bruises.

After the injury, respondent was admitted to a hospital, where he spent eight days. The admission record states that he had suffered at least three fractures of the facial bones,

and probably a broken rib. The facial fractures required plastic surgery while he was in the hospital. Thereafter, he was unable to work for 28 weeks. Respondent produced extensive medical and eyewitness testimony that his injuries were extremely painful, disabling, and in some respects permanent.

On August 8, 1962, respondent filed a written claim for damages in the office of the clerk of appellant city. The claim, to whose details we refer hereinafter, was in the amount of $100,000. On August 9, the claim was served upon Officer Haynes and Officer Owens.

Next, on September 17, 1962, respondent commenced this action. The complaint named Officers Haynes and Owens as defendants; set forth a cause of action for assault and battery which claimed $100,000 in compensatory damages and $100,000 in punitive damages; and set forth a cause of action for false imprisonment, for which $25,000 in compensatory damages and $100,000 in punitive damages were claimed. The defendant officers appeared and answered in due course.

On May 15, 1963, during the pendency of the original action, respondent executed an ''Amended Claim for Damages'' through one of his attorneys and filed it with the clerk of appellant city. The claim filed in 1962 had been addressed to Officers Haynes and Owens. The amended claim was addressed to the officers and to the City of Long Beach, and the amount of damages claimed was $200,000. Also on May 15, respondent noticed a motion for leave to file an amended complaint in the pending action. The proposed amended complaint repleaded the same causes of action, but included appellant city as a defendant and added allegations that the city had employed the two officers as policemen on May 18, 1962, and that the officers had acted in the course and scope of their employment. The notice included notice of a motion for an order authorizing service of the amended complaint upon the defendants Haynes and Owens, and for an order modifying the pretrial conference order to include the City of Long Beach as a defendant and to add, as an issue in the case, whether the defendant officers had been acting within the scope of their employment by the city.

On May 17, 1963, the trial court granted the motion. The order deemed the proposed amended complaint to have been served and filed as of the order's date, allowed all three defendants 20 days to answer it, ordered off calendar a trial date then set for July 15, 1963, and allowed further pretrial at the request of either party.

The cause was tried before the court commencing on April 8, 1964, all parties having waived a jury. In addition to various denials in their answer to the amended complaint, the three defendants had pleaded two affirmative defenses. In the first, they made various factual allegations concerning the events of May 8, 1962, to which the amended complaint was addressed. They alleged that "each of the defendants" (apparently meaning each of the two defendant officers) was a duly appointed and authorized peace officer; that respondent was drunk and disorderly in a public place, in violation of a Long Beach ordinance; that he engaged in disorderly conduct in violation of another ordinance; that the defendant officers were attempting to arrest Jack Neal for drunk and disorderly conduct in a public place; that respondent obstructed them in the performance of their duties in arresting Neal; that respondent had driven an automobile in a reckless manner; and that the officers "used only such force as was reasonably necessary to effect the arrest of [respondent] for a misdemeanor committed in the officers' presence."

The second affirmative defense pleaded a Long Beach ordinance providing that no suit for damages shall be filed against any officer or employee of the city unless a written verified claim were first served personally upon the officer or employee within 90 days of the date of the occurrence giving rise to the cause of action. It was alleged that such claim had not been served in compliance with the ordinance. The issues, if any, joined upon the second affirmative defense are not involved in this appeal.

The trial court found that appellant Haynes, while employed as a police officer by the appellant city and while acting in the course and scope of his employment, had "wilfully, maliciously, and wrongfully" assaulted and battered respondent; that respondent had sustained medical expenses in the amount of $41.50 and loss of income in the amount of $3,763.20, and general damages in the sum of $8,195.30, totalling compensatory damages in the amount of $12,000; that appellant Haynes had acted with "express oppression and malice"; and that exemplary damages in the additional sum of $5,000 should be awarded against Haynes.

In response to the issues joined upon appellants' first affirmative defense, the court found that each and all of its specific allegations concerning respondent's conduct on May 18, 1962, were untrue. The court explicitly found that "It is untrue that the defendant police officers used only such force

as was reasonably necessary to effect the arrest of [respondent] for a misdemeanor committed in the officers' presence . . .'' and that ''In fact, the defendant B. Haynes used unreasonable, excessive, unwarranted and unnecessary force to effect the arrest of [respondent].'' The findings exonerated Officer Owens in all respects. The court also found that the officers had arrested and confined respondent, but that they had not falsely imprisoned him. Judgment was thereafter entered according to the findings. Appellants city and Haynes moved for a new trial and their motion was denied. This appeal follows.

## Insufficiency of the Evidence

We first address appellants' contention that the evidence is insufficient to sustain the judgment. They argue that respondent knew or should have known that he was being arrested, and that section 834a, Penal Code, imposed upon him the duty to refrain from offering any resistance; and that appellant Haynes, acting as a peace officer under section 835a, Penal Code, had the right to use reasonable force to effect the arrest or overcome resistance.

We hold that the evidence is sufficient. First, it is by no means clear that respondent knew or should have known that he was being arrested; as we have seen, the physical altercation began and ended without anyone telling him that he was under arrest, and no one had accused him of any criminal offense. Second, Penal Code section 835a did not give appellant Haynes the right to use *unreasonable* force for any purpose, and the trial court found that he did exactly that. The court observed from the bench that the officer had been justified in doing everything he did ''up until the time, with the man flat on his back and helpless, that he struck him with such vicious force.'' It thus appears that the court felt that appellant Haynes had used reasonable force in subduing respondent to the point of grounding him and pinning him down, but that, once he was pinned, the officer used unreasonable and unnecessary force in striking him repeatedly with a fist. The evidence is wholly sufficient to support the findings that unreasonable force was used and that an assault and battery was thereby committed. The findings, in turn, support the judgment.

## The Defense of Immunity

Appellants next contend that both of them—the employing city and Haynes, the city's police officer—are

immune from civil liability for the officer's actions. They argue that the city is not liable, by reason of subdivision (b) of section 815.2, Government Code,[1] if the officer is immune from liability; and that the officer is immune under section 820.2, Government Code,[2] because his act "was the result of the exercise of the discretion vested in him." This position asserts that the so-called doctrine of discretionary immunity will protect the arresting officer upon the ground that he was "vested" with the discretion to determine the amount of force to be used in making the arrest.

We hold to the contrary. The doctrine of discretionary immunity does not shield appellant Haynes from liability in this case.

■ Government Code sections 815.2 and 820.2, relied upon by appellants, are found in the legislation widely cited as the California Tort Claims Act of 1963, herein called the "Act." (Stats. 1963, ch. 1681, p. 3267; tit. 1, div. 3.6, Government Code [commencing with § 810].) Respondent's cause of action herein arose during the so-called moratorium period which preceded the effective date of the Act.[3] Accor-

---

[1] Section 815.2 reads in full as follows:

"815.2. (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

"(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

[2] "820.2. Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

[3] The period was established by the "moratorium legislation" (Stats. 1961, ch. 1404, p. 3209) enacted at the 1961 Regular Session of the Legislature after the Supreme Court decision in *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457]. Section 1 of the 1961 legislation added section 22.3, Civil Code, which re-enacted the pre-*Muskopf* rule of governmental immunity from tort liability. Section 3 provided that section 1 would remain in effect until the 91st day after final adjournment of the 1963 Regular Session. The "moratorium period" was spelled out in section 4, to commence on, and to include, February 27, 1961 (the date upon which the *Muskopf* decision had become final) and to run to—but not include—the 91st day following 1963 adjournment. The Legislature, after passing the 1963 Act, finally adjourned its 1963 Regular Session on June 21, 1963. The critical "91st day" in 1963, when the Act took effect and the 1961 moratorium legislation expired by its own terms, was September 20, 1963. The "moratorium period," as such, thus ran from February 27, 1961, to September 19, 1963, inclusive. (See Van Alstyne, California Government Tort Liability (Cont. Ed. Bar) pp. 105-111.) Respondent's cause of action herein arose on May 18, 1962.

dingly, the validity of the cause of action, and of the defense of immunity asserted against it by appellants, is to be determined under the provisions of the Act. (*Hayes* v. *State of California* (1964) 231 Cal.App.2d 48, 51 [41 Cal.Rptr. 502].)

Section 820.2 purports to reenact the common law discretionary immunity of public employees. This is established by the legislative committee comment published contemporaneously with the statute's enactment.[4] (*Ne Casek* v. *City of Los Angeles* (1965) 233 Cal.App.2d 131, 138-139 [43 Cal.Rptr. 294].) The first question, then, is whether, prior to the Act's enactment, a police officer had discretionary immunity from civil liability for the use of unreasonable force in making an arrest or in overcoming resistance to it.

The California cases have consistently held that a peace officer making an arrest is liable to the person arrested for using unreasonable force. (*Appier* v. *Hayes* (1942) 51 Cal. App.2d 111, 116 [124 P.2d 125]; *Boyes* v. *Evans* (1936) 14 Cal.App.2d 472, 479 [58 P.2d 922]; *Stowell* v. *Evans* (1931) 211 Cal. 565, 567 [296 P. 278]; *Lorenz* v. *Hunt* (1928) 89 Cal.App. 6, 10-11 [264 P. 336]; *Towle* v. *Matheus* (1900) 130 Cal. 574, 577 [62 P. 1064]. See *Jones* v. *City of Los Angeles* (1963) 215 Cal.App.2d 155, 157-159 [30 Cal.Rptr. 124] [holding that a pre-*Muskopf* cause of action for assault and battery by city policemen survived the "moratorium legislation" and, under *Muskopf*, existed against the city as well]; and see *People* v. *Lathrop* (1920) 49 Cal.App. 63, 67 [192 P. 722].)

In the California Law Revision Commission study which

---

[4]The comment first appeared as the comment of the California Law Revision Commission, relative to section 820.2, in the Commission's recommendations to the Legislature in the field of governmental immunity. (Recommendation Relating to Sovereign Immunity, 4 Cal. Law Revision Com. Rep. 803, 843.) It was thereafter adopted by the Senate Committee on Judiciary as its comment pertaining to section 820.2, and as such was inserted in the Senate Daily Journal of April 24, 1963, at page 1889. The comment follows:

"This section restates the pre-existing California law. (*Lipman* v. *Brisbane Elementary School Dist.* (1961) 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465]; *Hardy* v. *Vial* (1957) 48 Cal.2d 577 [311 P.2d 494]; *White* v. *Towers* (1951) 37 Cal.2d 727 [235 P.2d 209, 28 A.L.R.2d 636].) The discretionary immunity rule is restated here in statutory form to ensure that, unless otherwise provided by statute, public employees will continue to remain immune from liability for their discretionary acts within the scope of their employment.

"In the sections that follow, several immunities of public employees are set forth even though they have been regarded as within the discretionary immunity. These specific immunities are stated in statutory form so that the liability of public entities and employees may not be expanded by redefining 'discretionary immunity' to exclude certain acts that had previously been considered as discretionary."

produced the 1963 Act, it was expressly stated that the general rule in the United States, holding law enforcement officers personally liable for wrongful acts causing personal injury or death, applies in California. (Van Alstyne, A Study Relating to Sovereign Immunity, 5 Cal. Law Revision Com. Rep. 1, 415-416.) And, in *Davis* v. *Kendrick* (1959) 52 Cal.2d 517 [341 P.2d 673], it was stated (at pp. 518-519) that "Under common law policemen and other peace officers are not immune from liability for wrongful acts causing personal injury or death. [Citations.]"

In none of the California cases cited above does it appear that the respective peace officer, sued for damages resulting from his use of excessive force in making an arrest, asserted the discretionary immunity doctrine as a defense. In all probability, each eschewed such defense because no case holds that it was available to him. In determining whether the doctrine might apply in a forcible arrest case where—as here—it has been asserted as a defense, we may look to some of the cases where it has been applied to other aspects of a peace officer's conduct.

An officer is immune in a suit by a third party for his negligent failure to arrest an offender; his power to arrest or not to arrest, in the first instance, is a power in which discretion is vested in him, and the discretionary immunity doctrine applies. (*Tomlinson* v. *Pierce* (1960) 178 Cal.App.2d 112, 116 [2 Cal.Rptr. 700] ; and see *Rubinow* v. *County of San Bernardino* (1959) 169 Cal.App.2d 67, 69-70 [336 P.2d 968].)

In *White* v. *Towers* (1951) 37 Cal.2d 727 [235 P.2d 209, 28 A.L.R.2d 636], the Supreme Court held that a peace officer was immune from liability for malicious prosecution. The *White* decision apparently applied immunity in the malicious prosecution situation upon the ground (p. 730) that a peace officer's function of accusing criminal offenders is "directly connected with the judicial processes," in which (p. 731) immunity had already been extended to such official functionaries as prosecutors and grand jurors. Although the *White* v. *Towers* court did not mention "discretionary" immunity in terms, nor the "discretionary" character of the officer's act from which the claim originated, the decision may be fairly interpreted as an application of the discretionary immunity doctrine to claims against a peace officer for malicious prosecution.

However, in the later case of *Dragna* v. *White* (1955) 45 Cal.2d 469 [289 P.2d 428], the Supreme Court in effect

refused to apply the doctrine to protect a peace officer from liability for false arrest and imprisonment. Dragna had sued certain police officers, alleging that they had arrested and imprisoned him without a warrant and without cause. The trial court ruled that he stated no cause of action and granted judgment on the pleadings against him. The District Court of Appeal affirmed (280 P.2d 817), citing *White* v. *Towers, supra,* and the "elementary principle" (p. 819) that peace officers and other public servants were immunized "against claims resulting from errors of judgment while acting in the discharge of duty."

The Supreme Court reversed, holding that a police officer may be held civilly liable for false arrest and that Dragna, alleging his arrest without a warrant and without cause, had stated a cause of action. From the context of the prior District Court of Appeal decision, it appears that the Supreme Court considered the discretionary immunity doctrine and, rejecting it in a false arrest case, refused to extend it beyond the point reached in *White* v. *Towers.*

From the foregoing cases, we may first conclude that the discretionary immunity doctrine has not automatically operated to protect a peace officer from every error in judgment; and that, whereas an officer has discretionary immunity against a third party's claim for his failure to arrest an offender (*Tomlinson* v. *Pierce, supra*), he does not have the same immunity against the claim of the person arrested that the officer acted unreasonably in an arrest situation. (*Dragna* v. *White, supra.*) ■ Finally, and no case holding to the contrary, we conclude that the discretionary immunity doctrine did not, prior to the 1963 Act, protect a peace officer from liability for the use of unreasonable force in making an arrest. Since the Act reenacted the former law of discretionary immunity, it did not create a defense where none had existed.

■ The Act itself, in chapter 3, "Police and Correctional Activities," commencing with section 845, Government Code, spells out six specific situations in which a public employee is declared to be immune from liability. None of the sections purports to immunize the employee for the use of unreasonable force in making an arrest. Appellants urge that the Legislature, in enacting section 820.2 relative to discretionary immunity, must have intended to immunize the policeman who makes a forcible arrest. We do not agree. Had the Legislature so intended, it would have materially exceeded

its stated intent to reenact the former law. Further, if the Legislature intended to immunize public employees from the consequences of police misconduct—itself a highly sensitive public issue in our time—we are convinced that it would have said so.

In *Ne Casek* v. *City of Los Angeles, supra,* 233 Cal.App.2d 131, a case decided since the Act's passage and subject to its provisions, it was held that the discretionary immunity doctrine as stated in Government Code section 820.2 protects a peace officer from liability for inadequate restraint of an arrested person who injured the claimant in escaping. As in *Tomlinson* v. *Pierce, supra,* 178 Cal.App.2d 112, the claimant in *Ne Casek* was a third party, not the person arrested, and the court's application of discretionary immunity is not controlling here. However, the *Ne Casek* court specifically referred (pp. 136-137) to an arresting officer's ''potential liability to the person arrested for the use of excessive force in effectuating the arrest and in maintaining effective custody.'' And, citing public policy in favor of clothing the arresting officer with discretionary immunity from a third party's claim arising from the arrestee's escape, the court said (p. 137):

''It may of course be contended that the dilemma of the police officer is theoretical rather than practical, that suits by persons arrested charging officers with the use of excessive force are few and far between and recoveries in such suits even rarer and further that at least under the Act the officer will be entitled to indemnity from the public entity except in cases of fraud, corruption or malice. (Gov. Code, §§ 825-825.6.) If that is so another compelling reason of public policy in favor of discretionary immunity becomes apparent: With little to fear from suits which charge excessive force, police officers, if subject to liability for damage done by suspects whom they have negligently permitted to escape from custody, will, if they think about the civil consequences at all, be inclined to use too much force in order to forestall claims such as the present one. *A rule of law which may encourage police brutality is not desirable.''* (Italics supplied.)

The *Ne Casek* decision supports respondent's position that under the Act a police officer does not have discretionary immunity from liability for the use of unreasonable force in making an arrest, and we share the conviction therein expressed that a rule of law encouraging police brutality is opposed to sound public policy. We hold, therefore, that

appellant Haynes is not immune from liability under Government Code section 820.2. It follows that appellant city is not immune under subdivision (b) of section 815.2, and is vicariously liable under subdivision (a) thereof. (*Jones* v. *City of Los Angeles, supra,* 215 Cal.App.2d 155, 157.)

### Compliance With Claims Statutes

█ Appellant city contends that a formal claim was not presented to it as required by law. Under the moratorium legislation in effect when respondent's cause of action arose on May 18, 1962, compliance with applicable claims statutes was a condition of maintaining the action against appellant city after the expiration of the moratorium period. In the instant case, the applicable statutes in effect on May 18, 1962, were sections 710-717, Government Code (since repealed and reenacted, with substantial revisions, by the Act).

It is undisputed that respondent's claim was presented to appellant city within the time and in the manner required by the statutes. Appellant city contends, though, that the claim purported on its face to be a claim against Officers Haynes and Owens alone, under section 801 et seq., Government Code, then in effect, and not against the city under sections 710-717.[5]

The question is whether the claim complied with the statutes. The answer lies in section 711, which required the claim to show the claimant's name and address; the address to which he desired notices to be sent; the date, place and other circumstances of the occurrence which gave rise to the claim; a general description of the ". . . damage or loss . . ." incurred; and the amount claimed at the time of presentation of the claim, together with the basis of computation thereof. The section also required that the claim be signed by the claimant or by someone on his behalf, and it permitted amendment at any time.

Irrespective of its captions and content directed to Officers Haynes and Owens, respondent's claim contained all the

---

[5]Appellant city's position is based upon the captions and the first few lines of the claim, which read as follows:

CLAIM PURSUANT TO SECTIONS
801 AND 802 GOVERNMENT CODE

"To: B. HAYNES AND GORDON OWENS, Police Officers of the City of Long Beach:

"You will hereby take notice that ROY ARTHUR SCRUGGS, 1135 Frigate, Wilmington, California, hereby makes claim *against you, and each of you,* for injuries . . . [etc.]'' (Italics supplied.)

information required. Also, he signed it. We hold that the claim complied with the applicable statutes in all respects.

### Punitive Damages

■ Both appellants attack the award of $5,000 in punitive damages against appellant Haynes. They state, correctly, that before punitive damages can be awarded, it must be shown that the defendant acted with the wrongful intent to injure the claimant. (*Wolfsen* v. *Hathaway* (1948) 32 Cal.2d 632, 650 [198 P.2d 1].) Respondent made the required showing in this case by proving that, without any justification associated with a legitimate police function, Officer Haynes severely beat him while holding him in a helpless position on the ground. As in the case of compensatory damages, the amount of punitive damages is largely within the discretion of the trier of fact (*Boyes* v. *Evans, supra,* 14 Cal.App.2d 472, 480) and will not be disturbed on appeal as excessive ''unless upon consideration of the entire record including the evidence it must be said that the award was the result of passion or prejudice.'' (*Finney* v. *Lockhart* (1950) 35 Cal.2d 161, 164 [217 P.2d 19].) Having reviewed the record, we cannot conclude such result.

Appellants have also advanced certain arguments addressed to the amount and computation of the compensatory damages awarded. We have reviewed the full record in these respects. The trial court's findings with regard to compensatory damages are supported by the evidence, and no error appears.

The judgment is affirmed.

Devine, P. J., and Christian, J., concurred.

A petition for a rehearing was denied July 28, 1967, and appellants' petition for a hearing by the Supreme Court was denied September 27, 1967.