[S. F. No. 20483. In Bank. Jan. 27, 1961.]

NATALIE M. LIPMAN, Appellant, v. BRISBANE ELEMENTARY SCHOOL DISTRICT et al., Respondents.

Barnett & Robertson, Philip Barnett and Rodney H. Robertson for Appellant.

E. Conrad Connella, C. S. Sherburne, Earl B. Myers and Richard H. Perry as Amici Curiae on behalf of Appellant.

Keith C. Sorenson, District Attorney, and L. M. Summey, Deputy District Attorney, for Respondents.

GIBSON, C. J.—This action for damages was brought by plaintiff, superintendent of defendant school district, against the district, three trustees, the county superintendent of schools and the district attorney. A demurrer to the complaint was sustained without leave to amend, and plaintiff has appealed from the ensuing judgment.

### The Complaint Against the School District

It is alleged in substance against the district that the three trustees, constituting a majority of the board and acting within the scope of their official duties, maliciously engaged in a course of conduct for the purpose of discrediting plaintiff's reputation and forcing her out of her position. The asserted conduct of the trustees consisted primarily of disparaging statements made by them concerning plaintiff to various persons including district employees attending secret meetings, newspaper reporters and members of the public to the effect that she was dictatorial, operated a "rubber stamp board," was overpaid, suppressed facts from the board, tampered with minutes of board meetings, received "kickbacks" from district employees, used school employees and school time to engage in political campaigns, engaged in "shady dealings" and "cleaned up" on business transactions involving the district,

and that a grand jury investigation was being made of plaintiff concerning discrepancies in construction funds. It is further alleged that the conduct of the trustees constituted a repudiation by the district of plaintiff's contract and so maligned her reputation and integrity as to prevent her from performing her duties.

In *Muskopf* v. *Corning Hospital District, ante,* p. 211 [11 Cal.Rptr. 89, 359 P.2d 457], we held that the rule of governmental immunity may no longer be invoked to shield a public body from liability for the torts of its agents who acted in a ministerial capacity. But it does not necessarily follow that a public body has no immunity where the discretionary conduct of governmental officials is involved. ▉▉ While, as pointed out in the Muskopf case, a governmental agent is personally liable for torts which he commits when acting in a ministerial capacity, a different situation exists with respect to discretionary conduct. Because of important policy considerations, the rule has become established that government officials are not personally liable for their discretionary acts within the scope of their authority even though it is alleged that their conduct was malicious. (*Hardy* v. *Vial,* 48 Cal.2d 577, 582-584 [311 P.2d 494]; *Coverstone* v. *Davies,* 38 Cal.2d 315, 322 [239 P.2d 876]; *White* v. *Towers,* 37 Cal.2d 727, 730-732 [235 P.2d 209, 28 A.L.R.2d 636]; see *Barr* v. *Matteo,* 360 U.S. 564, 569 et seq. [79 S.Ct. 1335, 3 L.Ed.2d 1434].) The subjection of officials, the innocent as well as the guilty, to the burden of a trial and to the danger of its outcome would impair their zeal in the performance of their functions, and it is better to leave the injury unredressed than to subject honest officials to the constant dread of retaliation. (*Hardy* v. *Vial,* 48 Cal.2d 577, 582-583 [311 P.2d 494].)

▉▉ The immunity of the agency from liability for discretionary conduct of its officials, however, is not coextensive with the immunity of the officials in all instances. (See 3 Davis, Administrative Law Treatise (1958), 482-505, 542-544; 2 Harper and James, The Law of Torts, 1640-1642, 1657-1665; Hall and Wigmore, *Compensation for Property Destroyed to Stop the Spread of a Conflagration* (1907), 1 Ill. L.Rev. 501, 514 et seq.) The danger of deterring official action is relevant to the issue of liability of a public body but is not decisive of that issue. It is unlikely that officials would be as adversely affected in the performance of their duties by the fear of liability on the part of their employing

agency as by the fear of personal liability. The community benefits from official action taken without fear of personal liability, and it would be unjust in some circumstances to require an individual injured by official wrongdoing to bear the burden of his loss rather than distribute it throughout the community. ■ Although it may not be possible to set forth a definitive rule which would determine in every instance whether a governmental agency is liable for discretionary acts of its officials, various factors furnish a means of deciding whether the agency in a particular case should have immunity, such as the importance to the public of the function involved, the extent to which governmental liability might impair free exercise of the function, and the availability to individuals affected of remedies other than tort suits for damages.

■ With respect to the complaint against the district, the acts alleged, insofar as they came within the scope of authority of the trustees, were of a discretionary character. As we shall see in discussing the complaint against the individual defendants, the trustees were immune as to such acts. There is a vital public interest in securing free and independent judgment of school trustees in dealing with personnel problems, and trustees, being responsible for the fiscal well-being of their districts, would be especially sensitive to the financial consequences of suits for damages against the districts. ■ It is also significant that, without holding a school district liable in tort for acts like those complained of, an employee from the outset has protection, in the form of mandamus or recovery for breach of contract, against consequences which would be among the most harmful and tangible, i.e., wrongful dismissal or suspension. (*Hancock* v. *Board of Education,* 140 Cal. 554, 561-562 [74 P. 44]; *Main* v. *Claremont Unified School Dist.,* 161 Cal.App.2d 189, 192, 207 [326 P.2d 573]; *Titus* v. *Lawndale School Dist.,* 157 Cal.App.2d 822, 829-830 [322 P.2d 56].)

■ The district is immune from tort liability for the alleged acts of the trustees within the scope of their authority, and familiar principles of agency preclude its liability for acts outside the scope of their authority. Accordingly, the complaint does not state a cause of action in tort against the district.

■ A school district, however, may be liable for breach of contract where its governing body, acting as such and complying with required formalities, either expressly repudiates

a contract or does some act which under generally accepted principles of law prevents the performance of the other contracting party. (Ed. Code, §§ 1006, 2402; *Hancock* v. *Board of Education,* 140 Cal. 554, 561-562 [74 P. 44] [relying on provisions of the former Political Code similar to sections 1006 and 2402 of the Education Code]; *Morgan* v. *Board of Education,* 136 Cal. 245, 246 [68 P. 703]; *Giguiere* v. *Patterson,* 138 Cal.App. 167, 171-173 [31 P.2d 804]; *Kistner* v. *Pomeroy,* 84 Cal.App. 550, 551 et seq. [258 P. 619]; see *Titus* v. *Lawndale School Dist.,* 157 Cal.App.2d 822, 830 [322 P.2d 56]; *cf. Denio* v. *City of Huntington Beach,* 22 Cal.2d 580, 591 [140 P.2d 392, 149 A.L.R. 320]; *Cope* v. *County of Sutter,* 206 Cal. 445, 454-455 [274 P. 750].)[1]

Where, as here, the alleged repudiation or prevention of performance arises out of asserted affirmative action of trustees, the district is not liable unless it appears that they have acted as a board and have complied with all the formalities required by law. Section 2204 of the Education Code provides, ''The governing board of any school district shall: . . . (b) Transact its business at regular or special meetings called for the purpose . . . ,'' and section 2204.2 provides, ''No action authorized or required by law shall be taken by the governing board of a school district except in a meeting open to the public.'' In the analogous case of *Barnhardt* v. *Gray,* 15 Cal.App.2d 307, 309 et seq. [59 P.2d 454], decided before the adoption of section 2204.2, it was held that in order to employ a teacher there must be a regular or special meeting of the board of trustees, that ''the board must act as a board and not as individual members,'' and that two members of a board consisting of three members had no power, when meeting casually on the street or elsewhere, to employ a teacher. Plaintiff concedes that none of the alleged improper conduct consisted of or resulted from formal action of the board as such, and it is apparent that the complaint cannot be amended to cure the defect. (*Cf. Lemoge Electric* v. *County of San Mateo,* 46 Cal.2d 659, 662, 664 [297 P.2d 638].)

In the absence of compliance with the statutory requirements there was no authority for the acts complained of by plaintiff insofar as concerns the alleged breach of contract, and it is obvious that the district cannot properly be held liable for acts which have not been duly authorized.

---

[1]References to the Education Code are to its provisions as they existed prior to its recodification in 1959.

This is not a case of failure on the part of the district to take affirmative action called for by the contract; in the event of such a breach, of course, the lack of formal action by the board would not preclude liability on the part of the district. Under the circumstances before us the conduct of the three trustees must be treated as conduct by unauthorized third persons.

The judgment must be affirmed with respect to plaintiff's action against the district.

### The Complaint Against the Trustees

It is alleged that the three trustees maliciously engaged in a course of conduct which was designed to obtain the removal of plaintiff from her position and resulted in impairing her reputation and professional standing. In this connection the complaint incorporates by reference the allegations against the district with respect to disparaging statements made by the trustees concerning plaintiff, and it is further alleged that for the purposes of maligning her and causing her dismissal the trustees asked questions of various persons regarding her fitness and discussed the matter with the district attorney and the county superintendent of schools.

A determination of whether the complaint states a cause of action against the trustees requires consideration of rules relating to liability for defamation and interference with contract.

An action will lie for the intentional interference by a third person with a contractual relationship either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification. (*Fifield Manor* v. *Finston,* 54 Cal.2d 632, 635 [7 Cal.Rptr. 377, 354 P.2d 1073]; *Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33, 35 [112 P.2d 631].) The most general application of the rule is to cases where the party with whom the plaintiff has entered into an agreement has been induced to breach it, but the rule is also applicable where the plaintiff's performance has been prevented or rendered more expensive or burdensome and where he has been induced to breach the contract by conduct of the defendant, such as threats of economic reprisals. (*White* v. *Massee,* 202 Iowa 1304 [211 N.W. 839, 841, 66 A.L.R. 143]; *Sumwalt Ice & Coal Co.* v. *Knickerbocker Ice Co.,* 114 Md. 403 [80 A. 48, 49-51]; *Bacon* v. *St. Paul Union Stockyards Co.,* 161 Minn. 522 [201 N.W. 326, 327]; see *Fifield Manor* v. *Finston,* 54 Cal.2d 632, 636 [7 Cal.Rptr. 377, 354 P.2d 1073]; Prosser on Torts [2d ed. 1955], 720, 729-730.)

 Defamation may be either libel or slander. (See Civ. Code, §§ 44, 45, 46.)[2] The burden of proof with respect to the issue of truth or falsity is on the defendant. (*Draper* v. *Hellman Com. Trust & Sav. Bank*, 203 Cal. 26, 41 [263 P. 240]; *Schomberg* v. *Walker*, 132 Cal. 224, 226 [64 P. 290]; *Clugston* v. *Garretson*, 103 Cal. 441, 446 [37 P. 469]; *Shumate* v. *Johnson Publishing Co.*, 139 Cal.App.2d 121, 131 [293 P.2d 531]; see Rest., Torts, § 613, comment h; Prosser on Torts [2d ed. 1955], § 96, p. 631; 30 Cal.Jur.2d, § 146, p. 770; *cf. Snively* v. *Record Publishing Co.*, 185 Cal. 565, 574 [198 P. 1].) As a general rule, the burden of pleading a particular matter and the burden of proving it correspond (see Clark on Code Pleading [2d ed. 1947], 610; *cf. Arnold* v. *American Insurance Co.*, 148 Cal. 660, 662 [84 P. 182, 25 L.R.A. N.S. 6]; *Allen* v. *Home Ins. Co.*, 133 Cal. 29, 30 [65 P. 138]; *Gunderson* v. *Gunderson*, 4 Cal.App.2d 257, 260 [40 P.2d 956]), and section 461 of the Code of Civil Procedure provides in part that "the defendant may, in his answer, allege both the truth of the matter charged as defamatory, and any mitigating circumstances." It follows that a plaintiff need not allege the statements are false. (See Prosser on Torts [2d ed. 1955], § 96, p. 631; *cf. Davis* v. *Hearst*, 160 Cal. 143, 193-194 [116 P. 530].) Holdings to the contrary in *Babcock* v. *McClatchy Newspapers*, 82 Cal.App.2d 528, 532, 536-537 [186 P.2d 737]; *Glenn* v. *Gibson*, 75 Cal.App.2d 649, 658 [171 P.2d 118]; and *Mortensen* v. *Los Angeles Examiner*, 112 Cal.App. 194, 202 [296 P. 927], are disapproved.

 The rule is settled, as pointed out above, that governmental officials are not personally liable for discretionary acts within the scope of their authority, and this rule applies not only to acts essential to the accomplishment of the main purposes for which the office was created but also to acts which, although only incidental and collateral, serve to promote those purposes. (*White* v. *Towers*, 37 Cal.2d 727, 733 [235 P.2d 209, 28 A.L.R.2d 636].) Subdivision (f)

---

[2]It does not appear whether there has been compliance with the statutory requirement (Code Civ. Proc., § 830) that, before a summons is issued in an action for libel or slander, the plaintiff must file a written undertaking in the sum of $500. The filing of the undertaking is not necessary to vest jurisdiction in the first instance, the defendant may waive it, and, even after a motion has been made to dismiss for lack of a proper undertaking, the court has power to permit the filing and may then overrule the motion. (See *Kennaley* v. *Superior Court*, 43 Cal.2d 512, 515 [275 P.2d 1]; *Bried* v. *Superior Court*, 11 Cal.2d 351, 354 [79 P.2d 1091].) The record does not disclose the facts relating to these matters, and they are not before us on this appeal.

of section 2204 of the Education Code provides that the governing board of a school district shall "examine carefully into the management, conditions, and needs of the schools." Obviously, an individual trustee by virtue of the nature of his office has power to investigate to determine whether cause for dismissal exists. The three trustees, accordingly, were acting within the scope of their powers and were within the immunity rule when they asked questions of various persons concerning plaintiff's fitness and when they discussed such matters with the district attorney and the county superintendent, who have similar investigatory powers.

A different situation, however, is presented by the allegations that the trustees made statements to various persons including newspaper reporters and members of the public to the effect that plaintiff suppressed facts from the board, tampered with minutes of board meetings, received "kickbacks" from district employees, engaged in "shady dealings" and "cleaned up" on business transactions involving the district. False statements of this type are clearly defamatory within the meaning of sections 45 and 46 of the Civil Code, and they would obviously make it difficult and burdensome for plaintiff to perform her contractual obligations. The statements allegedly made to the press and to members of the public were not confined to reports of charges that were being made; they purported to be statements of fact and were beyond the scope of the trustees' powers. In making these statements the three trustees were not within the immunity rule, and a cause of action is stated against them. The case of *Hardy* v. *Vial*, 48 Cal.2d 577 [311 P.2d 494], relied upon by defendants, is distinguishable because the school defendants involved there did not make statements to the public but only to three nonschool persons who filed false charges against the plaintiff with an appropriate administrative body in carrying out an alleged conspiracy with the officials.

### Complaint Against the District Attorney and the County Superintendent of Schools

It is alleged that, maliciously and for the purpose of maligning plaintiff and causing her dismissal, the district attorney and the county superintendent of schools authorized members of their staffs to make investigations of plaintiff's fitness for her position, and that in the course of these investigations statements were made to various members of the public which plaintiff asserts were defamatory. The district attorney has a duty to conduct all prosecutions for public

offenses (Gov. Code, § 26500) and to give his opinion to county and district officers on matters relating to their offices (Gov. Code, § 26520). The county superintendent has power to investigate the acts of district superintendents. (Ed. Code, § 352, subds. (a) and (b).) It is clear that the conduct of these defendants was within the immunity rule insofar as they investigated and discussed plaintiff's fitness with each other and with the trustees. They cannot claim immunity insofar as they made or caused to be made defamatory statements concerning plaintiff to members of the public which were not merely reports of official action but instead purported to be statements of fact within their personal knowledge.

The complaint, however, is defective in that it is not alleged that any of the statements which can be said to be defamatory were made at the direction of the district attorney or the county superintendent. Moreover, the complaint does not allege either the specific words or the substance of statements attributed to the district attorney but instead merely alleges the conclusions of the pleader that statements were made which "intimated and suggested" that plaintiff had done certain wrongful things. As we have seen, the demurrer was sustained without leave to amend. Plaintiff states that the defects in the complaint relating to these two defendants can be cured by amendment, and she should be given an opportunity to revise her pleading. In this connection it should be noted that the complaint contains much immaterial matter which should be eliminated in the event of amendment.

The judgment is affirmed as to the district and reversed as to the individual defendants.

Traynor, J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

Respondents' petition for a rehearing was denied February 21, 1961.