[Civ. No. 27592.   Second Dist., Div. Three.   Mar. 22, 1965.]

KATHRYNE NE CASEK, Plaintiff and Appellant, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

Smith, Butts & Diekman and David A. Binder for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, Victor P. Spero, Chief Deputy City Attorney,

and Arthur Y. Honda, Deputy City Attorney, for Defendants and Respondents.

KAUS, J.—Appeal from judgment of dismissal, following the sustaining of defendants' demurrers without leave to amend.

The first amended complaint to which the demurrers were directed alleged in substance:

The individual defendants Conrad and Modarelli were police officers employed by the defendant City of Los Angeles on November 22, 1961. In the afternoon of that day they had arrested and handcuffed two persons whom they had charged or suspected of an undisclosed violation of law and who "defendants knew, or in the exercise of reasonable care should have known, were dangerous, desperate and desirous of escaping and avoiding arrest and imprisonment." Thereafter the defendants "carelessly, recklessly, negligently and unlawfully" allowed the two suspects to escape. Handcuffed together the escapees ran along the public sidewalk which was then occupied by many persons including the plaintiff. They collided with her, causing her to be thrown to the sidewalk, with resulting personal injuries.

The complaint also alleges that the defendants knew, or in the exercise of reasonable care should have known, that if the suspects were not held under actual physical restraint, they would be dangerous to members of the public such as the plaintiff. In particular, such knowledge was, or should have been, derived from the fact that the two suspects were handcuffed together.

Although, as will be demonstrated, the result is unaffected by the date of this occurrence, it should be noted that it happened on November 22, 1961, after the passage of Civil Code, section 22.3 but before the enactment of the comprehensive legislation sometimes referred to as the California Tort Claims Act of 1963, which we will call the "Act."

■ It is our conclusion that no cause of action has been alleged against any defendant either under the common law as it was thought to be before *Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457] and *Lipman* v. *Brisbane Elementary School Dist.*, 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465], or under the law as declared by those decisions. We further conclude that the Act did not change the law pertaining to the facts before us and that—with one possible exception noted at the end of this opinion—no questions of retroactivity are involved.

Counsel for both sides have correctly analyzed that this appeal involves two basic questions, although each has its ramifications. The first question is whether, regardless of the official status of the defendants the complaint states a cause of action against the officers and hence, by the application of the doctrine of respondeat superior, against the city. The second question is whether or not the officers are protected by the so-called "discretionary immunity" doctrine. Since we feel that the answer to the second question is freer from doubt than the answer to the first[1] and that it is in the affirmative, we do not reach the first.

There is no question that police officers may, in a proper case, be found to be engaged in a discretionary activity and thus protected by the doctrine recognized in *Lipman* v. *Brisbane Elementary School Dist., supra,* that government officials are not personally liable for their discretionary acts within the scope of their authority. (*Ibid.,* p. 229.) Thus in *Tomlinson* v. *Pierce,* 178 Cal.App.2d 112 [2 Cal.Rptr. 700] and *Rubinow* v. *County of San Bernardino,* 169 Cal.App.2d 67 [336 P.2d 968], police officers were held to be immune from civil liability or allegations that they negligently failed to arrest suspected lawbreakers. But the fact that police officers may be protected by the doctrine, does not necessarily mean that they are protected when engaging in activities which are properly classifiable as ministerial rather than discretionary.

Applied to the case before us, this means that while a police officer may be protected as far as his decision not to make an arrest is concerned, it does not follow that, the decision to arrest having been made, he cannot be answerable in damages for the consequences of a careless execution of his decision. The question in each case must be whether or not the particular activity which is alleged to have been improperly performed, is to be classified as discretionary or ministerial.

The cases are not lacking in definitions. In *Tomlinson* v. *Pierce, supra,* the distinction is stated as follows, quoting from *Doeg* v. *Cook,* 126 Cal. 213, 216 [58 P. 707, 77 Am.St. Rep. 171] : " 'The liability of a public officer to an individual for his negligent acts or omissions in the discharge of an official duty depends altogether upon the nature of the duty to which the neglect is alleged. Where his duty is absolute,

---

[1]Here respondents' reliance on *Richards* v. *Stanley,* 43 Cal.2d 60 [271 P.2d 23] and *Azcona* v. *Tibbs,* 190 Cal.App.2d 425 [12 Cal.Rptr. 232] is possibly misplaced in view of *Hergenrether* v. *East,* 61 Cal.2d 440 [39 Cal.Rptr. 4, 393 P.2d 164].

certain, and imperative, involving merely the execution of a set task—in other words, is simply ministerial—he is liable in damages to anyone specially injured, either by his omitting to perform the task, or by performing it negligently or unskillfully. On the other hand, where his powers are discretionary, to be exerted or withheld according to his own judgment as to what is necessary and proper, he is not liable to any private person for a neglect to exercise those powers, nor for the consequences of a lawful exercise of them where no corruption or malice can be imputed, and he keeps within the scope of his authority.' " (*Ibid.*, pp. 116-117.) That this definition leaves a great deal of room for argument in particular cases is obvious. Activities which are clearly discretionary as far as the decision to engage in them is concerned, obviously have their ministerial features once the decision has been made. Conversely even the most ministerial task, has its discretionary aspects. In *Ham* v. *County of Los Angeles*, 46 Cal.App. 148, 162 [189 P. 462] it is said: ". . . it would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail."

Since obviously no mechanical separation of all activities in which public officials may engage as being either discretionary or ministerial is possible, the determination of the category into which a particular activity falls should be guided by the purpose of the discretionary immunity doctrine. This purpose was expressed by our Supreme Court in *Lipman* v. *Brisbane Elementary School Dist.*, 55 Cal.2d 224, 229 [11 Cal.Rptr. 97, 359 P.2d 465] as follows: "The subjection of officials, the innocent as well as the guilty, to the burden of a trial and to the danger of its outcome would impair their zeal in the performance of their functions, and it is better to leave the injury unredressed than to subject honest officials to the constant dread of retaliation." Several California cases[2] have quoted the statement of Judge Learned Hand in *Gregoire* v. *Biddle*, 177 F.2d 579, 581: "It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public

---

[2]*Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211, 221 [11 Cal.Rptr. 89, 359 P.2d 457]; *Hardy* v. *Vial*, 48 Cal.2d 577, 582-583 [311 P.2d 494]; *Elder* v. *Anderson*, 205 Cal.App.2d 326, 333 [23 Cal.Rptr. 48], and *Legg* v. *Ford*, 185 Cal.App.2d 534, 543-544 [8 Cal.Rptr. 392].

good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed ·be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.''

While undoubtedly there are many cases where either judicial precedent or reason compel a holding in particular situations that a duty is discretionary or ministerial, there are others—and this is one of them—where precedent at least is lacking. Thus we must look to the reasons advanced in justification of the discretionary immunity doctrine and determine whether in the situation before us, they are applicable.

In spite of certain intimations in the public communications media to the contrary, the courts recognize that the public has a vital interest in suspected law violators being arrested and brought to trial on the charges against them. Any rule which would restrict a police officer's zeal in carrying out his duties as a law enforcement official is undesirable in the absence of strong countervailing considerations, such as the protection of constitutional rights.

The legal problems which the police officer on his beat already faces are formidable enough without superimposing an additional source of liability. First of all there are the problems connected with the decision to make an arrest in the first place, with attendant civil liability and the consequences of the exclusionary rule, if the arrest is unjustified. (*Miller* v. *Glass,* 44 Cal.2d 359, 361 [282 P.2d 501]; *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].) Then there

is the potential liability to the person arrested for the use of excessive force in effectuating the arrest and in maintaining effective custody. (See *Stowell* v. *Evans,* 211 Cal. 565, 567 [296 P. 278]; *People* v. *Lathrop,* 49 Cal.App. 63, 66 [192 P. 722]; Pen. Code, §§ 149, 835, 835a; Rest., Torts, §§ 133, 134, 136; 60 A.L.R.2d 873, 885.) If we were to add another potential source of liability, namely the person who is injured by an escaped suspect on whom the officer has used insufficient force, then indeed, if we may paraphrase an old Scottish case,[3] "No man but a beggar or a fool would be a policeman."[4]

It therefore appears to us that if, as recognized in *Lipman,* it is the possible dampening of a public official's zeal which is the basis for the discretionary immunity doctrine, its application seems particularly appropriate in the present context.

It may of course be contended that the dilemma of the police officer is theoretical rather than practical, that suits by persons arrested charging officers with the use of excessive force are few and far between and recoveries in such suits even rarer and further that at least under the Act the officer will be entitled to indemnity from the public entity except in cases of fraud, corruption or malice. (Gov. Code, §§ 825-825.6). If that is so another compelling reason of public policy in favor of discretionary immunity becomes apparent: With little to fear from suits which charge excessive force, police officers, if subject to liability for damage done by suspects whom they have negligently permitted to escape from custody, will, if they think about the civil consequences at all, be inclined to use too much force in order to forestall claims such as the present one. A rule of law which may encourage police brutality is not desirable.

Our discussion up to this point has assumed negligence in the decision of the arresting officer to use or not to use a particular force or restraint. While it seems clear from the complaint before us that the gravamen of the charge of negligence against the officers is their failure to keep the two suspects under actual physical restraint, it is perhaps within the ambit of plaintiff's allegations that the reason why they escaped was not a deliberate decision on the part of the officers not to use a particular physical restraint, but that whatever

[3] *Miller* v. *Hope* (1824) 2 Shaw, H. L. 125, 134.

[4] On this entire subject matter the court has found the profound study by Professor Louis L. Jaffe appearing in 77 Harvard Law Review, page 1 and 77 Harvard Law Review, page 209 most illuminating.

restraint they did decide to use, was clumsily applied. While the negligent execution of a course of conduct previously decided on is certainly more "ministerial" than the primary decision to engage in such conduct, we do not believe that the public policy which, we think, demands that the choice of method of keeping an arrest effective be subject to immunity, would be furthered by drawing so subtle a distinction. If zeal in making arrests is worthy of being encouraged by not making the deliberate choice of using minimal force subject to review by a judge or jury, this goal would be effectively frustrated by making the manner of executing the course chosen subject to judicial scrutiny in a civil suit for damages such as this one. We accomplish nothing by fanning the officer's ardor one moment and extinguishing it the next.

It may be worth mentioning in this connection that a similar distinction between choice of plan and execution thereof was urged on the California Law Revision Commission by its distinguished consultant, Professor Van Alstyne, and rejected. In his brilliant "Study Relating to Sovereign Immunity" (5 Cal. Law Revision Commission 1, 430-432) he discusses the case of *Williams* v. *State,* 308 N.Y. 548 [127 N.E.2d 545]. In that case it was held that the state was not liable for intentional injury done by a prisoner who had escaped from a minimum security prison. The injury was inflicted for the purpose of making the prisoner's escape good. Professor Van Alstyne urged upon the Law Revision Commission a distinction between the discretionary decision to incarcerate a particular prisoner in a minimum security facility and negligence in the administration of the minimum security correctional program. His suggestion was not accepted by the Commission, nor by our Legislature.

■ This brings us directly to a discussion of the possible impact of the 1963 legislation on the liability of the defendant officers, the defendant city or both. Our discussion must be governed by the legislative mandate that the Act should apply retroactively, if that can be done under the state and federal Constitutions. Of course if the Act imposes no liability on any defendant, had these occurrences taken place after its effective date, no problem of retroactivity is involved.

■ Government Code, section 820.2[5] purports to re-enact the common law discretionary immunity of public employees.

---

[5] "820.2. Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

The comment of the Legislative Committee inserted in the Senate Journal of April 24, 1963, page 1889 leaves no doubt on that score.[6] Government Code, section 815.2[7] provides that if the employee is immune, so is the public entity.

If these sections were the only ones possibly involved they ought to settle the argument, but they are not. The statutory scheme is to declare general immunities of employees in sections 820.2 to 822.2, but to amplify on these general grants of immunity—and perhaps to some extent detract therefrom—in those chapters of the Act dealing with the liabilities and immunities of public entities and public employees in particular fields. Chapter 3 of the Act (Gov. Code, §§ 844-846) deals with "Police and Correctional Activities."

▇ In this chapter we find section 845.8[8] which grants a broad immunity to public entities and public employees for an "injury caused by an escaping or escaped prisoner." According to the Law Revision Commission comment this section merely purports to be a specific application of the discretionary immunity recognized in California cases and Government Code, section 820.2.[9] The parties have devoted considerable energy to arguments that this section either does

[6] "This section restates the pre-existing California law. *Lipman* v. *Brisbane Elementary School Dist.* (1961) 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465]; *Hardy* v. *Vial* (1957) 48 Cal.2d 577 [311 P.2d 494]; *White* v. *Towers* (1951) 37 Cal.2d 727 [235 P.2d 209, 28 A.L.R.2d 636]. The discretionary immunity rule is restated in statutory form to ensure that, unless otherwise provided by statute, public employees will continue to remain immune from liability for their discretionary acts within the scope of their employment.

"In the sections that follow, several immunities of public employees are set forth even though they have been regarded as within the discretionary immunity. These specific immunities are stated in statutory form so that the liability of public entities and employees may not be expanded by redefining 'discretionary immunity' to exclude certain acts that had previously been considered as discretionary."

[7] "815.2. (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

[8] "845.8. Neither a public entity nor a public employee is liable for: (a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release. (b) Any injury caused by an escaping or escaped prisoner."

[9] "This section is a specific application of the discretionary immunity recognized in California cases and in Section 820.2. The extent of the freedom that must be accorded to prisoners for rehabilitative purposes

or does not cover the situation at bench. Doubt is cast on what appears at first blush to be a code section directly in point by the definition of the word ''prisoner'' in Government Code, section 844.[10] We need not decide that point because obviously if section 845.8 does not cover the situation, section 820.2 does. Our only reason for referring to chapter 3 at all is appellant's reliance on section 844.6.[11]

Appellant argues that the language contained in Government Code, section 844.6, subdivision (d), to the effect that ''Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission,'' standing side by side, as it does, with a broad grant of immunity to public entities from liability for injury caused by prisoners, means that under the Act public employees are liable for injuries caused by prisoners. ▮ To this there are several answers: 1. Government Code, section 844.6, subdivision (d), does not create a liability. It simply negates exoneration by that section of liabilities otherwise created. Government Code, section 820[12] makes public employees liable to the same extent as private persons. Assuming for the sake of argument that a private person would be subject to liability under the circumstances related in the complaint before us, we simply cannot read the lack of exoneration in section 844.6, subdivision (d), as impliedly doing away with the general immunity created by section 820.2 and the specific immunity of section 845.8 which may or may not be applicable. If section 845.8 is not applicable because the two suspects in the present case are not ''prisoners'' within the meaning of the Act, then of course the failure to exonerate contained in section 844.6, subdivi-

---

and the nature of the precautions necessary to prevent escape of prisoners are matters that should be determined by the proper public officials unfettered by any fear that their decisions may result in liability.''

[10]''844. As used in this chapter, 'prisoner' includes an inmate of a prison, jail or penal or correctional facility.''

[11]The pertinent provisions of Government Code, section 844.6 are: ''(a) Notwithstanding any other provisions of law, except as provided in subdivisions (b), (c), and (d) of this section, a public entity is not liable for: (1) An injury proximately caused by any prisoner. . . .''

''(d) *Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission. . . .''* (Italics added.)

[12]''820. (a) Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person. (b) The liability of a public employee established by this part (commencing with Section 814) is subject to any defenses that would be available to the public employee if he were a private person.''

sion (d), falls by the wayside too, because it is merely cautionary in nature, warning us that the immunity granted to public entities with respect to injuries caused by prisoners does not apply to public employees and that the latter are liable to prisoners as otherwise declared in the Act. The word "prisoner" cannot mean one thing in section 844.6 and another in section 845.8. 2. The Legislative Committee Comment, recorded in the Assembly Journal of June 15, 1963, page 5441 contains the following language: "The section does not affect the liability of public employees, and an employee may be held liable for an injury to a prisoner or an injury caused by a prisoner even though the public entity is not liable. Other provisions of the statute, however, provide public employees with substantial immunity from liability for injuries to prisoners and injuries caused by prisoners." It is thus clear that it was not the legislative intent to appear to grant an immunity in section 845.8, which had already been withheld in section 844.6.

We are therefore of the opinion that neither the common law as interpreted by *Muskopf* and *Lipman,* nor the 1963 legislation provide for any relief to plaintiff under the circumstances disclosed, either against the officers or against the city.

There is one loose end with which we should deal: *Lipman* contains a dictum to the effect that there may be liability on a public entity for discretionary conduct of its officials, although the officials themselves may be protected by the discretionary immunity doctrine. (*Ibid.,* p. 229.) We know of no case in which the dictum has been applied as law. Certain it is that the Act expressly disavows the suggestion advanced in *Lipman.* ■ Section 815.2 extends immunity to public entities when such immunity is given to employees. The Legislative Committee Comment (Senate Journal, April 24, 1963, pp. 1887-1888) reads in part: "Thus, this section nullifies the suggestion appearing in a dictum in *Lipman* v. *Brisbane Elementary School Dist.* (1961) 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465] that public entities may be liable for the acts of their employees even when the employees are immune." If section 815.2 can be retroactively applied, we need not even consider whether, should the *Lipman* dictum ever have been the law, it was the law on November 22, 1961, and whether it would apply to a situation such as this. We think that there is no constitutional inhibition to a retroactive application of the section as far as torts occurring after the effective date of the 1961 "moratorium" legislation are concerned. Although this legislation has been interpreted au-

thoritatively as providing that the substantive law declared in *Muskopf* was still the law after the 1961 legislation (*Corning Hospital Dist.* v. *Superior Court,* 57 Cal.2d 488, 493-495 [20 Cal.Rptr. 621, 370 P.2d 325]; *Thelander* v. *Superior Court,* 58 Cal.2d 811, 814 [26 Cal.Rptr. 643, 376 P.2d 571]), the *Thelander* case recognizes that new legislation enacted during the moratorium period may make governmental immunity applicable to torts occurring before its effective date. Whatever may be the rule with respect to causes of action arising before the effective date of the 1961 legislation, we have no doubt that the Legislature may constitutionally apply an immunity retroactively to causes of action which ripened after September 15, 1961. Civil Code, section 22.3 expressly provides that all actions brought or maintained on causes of action arising between the date of *Muskopf* (February 27, 1961) and before the 91st day after the final adjournment of the 1963 regular session could only be maintained if, among other things, they were not barred ''by any other provision of law enacted subsequent to the enactment of this act.'' Thus the Legislature on September 15, 1961, effectively caused the state of the law between that date and the envisioned future legislation to be inchoate and subject to immunities to be created. (See Van Alstyne, *Governmental Tort Liability: Judicial Law Making in a Statutory Milieu,* 15 Stan.L.Rev. 163, 236.) Therefore no right to any hypothetical cause of action suggested by the *Lipman* dictum could vest.

▮ To sum up: A police officer's duty to maintain effective custody of a suspect who has been arrested involves the exercise of much judgment and discretion concerning the means used to keep the suspect from escaping. ▮ We hold that not only before *Muskopf* and *Lipman,* but also during the ''moratorium'' and after the passage of the Act in 1963 it was the law that the officer was immune from civil liability to third persons for damage done by a suspect who has managed to escape, because it would not be in the public interest to make the officer's acts reviewable in civil litigation, even if in a particular case a plaintiff may be able to prove negligence.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 19, 1965.