[Civ. No. 11375.   Third Dist.   Mar. 8, 1967.]

FELIX SAVA et al., Plaintiffs and Appellants, v. THOMAS C. FULLER et al., Defendants and Respondents.

Edwin L. Z'Berg for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Willard A. Shank, Assistant Attorney General, and Burton Stanley, Deputy Attorney General, for Defendants and Respondents.

PIERCE, P. J.—In a wrongful death action involving the death of a child, her parents sued both the child's attending physician for malpractice (a count not involved on this appeal), and in a separate count Thomas Fuller, Ph.D., a botanist employed by the state, two Doe defendants (not served), and the state itself. The appeal is from a judgment after an order sustaining without leave to amend the demurrers of the defendants named in this count.

We decide the question whether the complaint did or could state a cause of action against the state, or the botanist, or both. A reversal will follow our decision that the trial judge decided too much, too soon (to obvert Lloyd George's quotation). The principal inquiry will be into the statutory meaning of the words "exercise of the discretion vested in him" as used in Government Code section 820.2[1] to grant immunity to a public employee so acting.

The gravamen of the portions of the complaint with which we are here concerned is that on May 18, 1965, the deceased, a 4-year-old child, was suffering from bronchopneumonia, an illness from which she died the next day; that the state botanist, Dr. Fuller, who was then acting within the course and scope of his employment, was "retained, employed and requested" by the physician (defendant Dr. Dentinger) to make an analysis of a plant "substance" the child may have ingested. It is alleged that Dr. Fuller, holding himself out to be an expert in the field of such analysis, with Does III and IV, negligently examined the plant and identified it as "toxic," which it was not. Decedent's death is stated to have been the proximate result of the incorrect analysis because the treatment by the physician was thereafter based upon the misinformation that ingestion of toxic materials rather than bronchopneumonia was the child's ailment.

An early section of the California Tort Claims Act, section 815, provides in part: *"Except as otherwise provided by statute*:

"(a) A public entity is not liable for an injury. . . .

"(b) The liability of a public entity . . . is subject to any

---

[1]This section is a part of the California Tort Claims Act of 1963 (Gov. Code, § 810 et seq.). All section references in this opinion are to this act unless otherwise noted.

immunity of the public entity provided by statute . . . , and is subject to any defenses that would be available to the public entity if it were a private person." (Italics supplied.)

As stated in *Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211, at page 219 [11 Cal.Rptr. 89, 359 P.2d 457]: "[W]hen there is negligence, the rule is liability, immunity is the exception." The effect of the 1963 legislation, however, is to reverse the formula when a public entity or employee is charged. By section 815 immunity becomes the rule, and we must look to the sections of the act following that section for exceptions. There are many—but with exceptions to the exceptions and exceptions to the exceptions to the exceptions, and so it goes sometimes seemingly ad infinitum to the delight of legal scholars and the despair of lawyers and judges.

Section 815.2 covers the vicarious liability of public entities generally. It provides (in subd. (a)) that the public entity is liable for an injury proximately caused by an employee acting within the scope of his employment *if the employee's act or omission* would have given rise to a cause of action against the employee. Conversely (in subd. (b)), *"Except as otherwise provided by statute"* a public entity is not liable when the employee is immune from liability. (Italics supplied.)

Section 820.2, the section with which we are particularly concerned, provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission *was the result of* the exercise of the discretion vested in him, whether or not such discretion be abused." (Italics supplied.)

This section relates specifically to public employ*ees*. Section 815.2, subdivision (b), heretofore referred to, however, grants immunity to the public entity whenever its employee enjoys immunity. Therefore, if the employee is immune under section 820.2, so also is the public entity.

The legislative committee comment on section 820.2 stated that the section was intended to restate pre-existing California law. (Van Alstyne, *Governmental Tort Liability: A Public Policy Prospectus,* 10 U.C.L.A. L.Rev. 463, 519.) We assume that statement to mean that interpretation of the legislative meaning of the words "exercise of discretion" are intended to be the same as under pre-existing law. Those are the only words in the section susceptible to interpretation. Inherent ambiguity exists in "exercise of discretion." But the *activating* words of the section are too clear for interpre-

tation. When there is no ambiguity in a statute there is nothing to interpret. (*Gaumer* v. *County of Tehama,* 247 Cal.App.2d 548, 551 [55 Cal.Rptr. 777]; *Redevelopment Agency* v. *Malaki,* 216 Cal.App.2d 480, 487-488 [31 Cal.Rptr. 92].) In the phrase "an injury resulting from . . . [an] act or omission where the act or omission *was the result of* the exercise of . . . discretion," the italicized words have no ambiguity in the language of tort law. A result is the consequence of a cause and cause means proximate cause. It does not include everything that follows after. In short the Legislature has *not* granted immunity from liability for every act or omission following after the exercise of discretion.

The words "exercise of discretion" have had a varied and sometimes an inconsistent, case-law interpretation with efforts at rationalization which to many jurists and legal scholars have not always seemed sound.[2]

█ The question here is not whether there was an exercise of discretion or whether an injury followed from an exercise of discretion. The question is whether the injury was the *result* of a discretionary act or omission. This court in *Morgan* v. *County of Yuba,* 230 Cal.App.2d 938 [41 Cal.Rptr. 508], had before it a pleading case in which it was alleged that a prisoner had threatened the life of plaintiffs' decedent and the sheriff had promised to give a warning if the prisoner was released on bail. The prisoner was released, the warning was not given, and decedent was killed by the man released. Cit-

---

[2] E.g., see the criticism of the "impairment of zeal" rationale of sovereign immunity stated in *Lipman* v. *Brisbane Elementary School Dist.,* 55 Cal.2d 224, 229 [11 Cal.Rptr. 97, 359 P.2d 465], and *Gregoire* v. *Biddle* (2d Cir. 1949) 177 F.2d 579, 581, in Van Alstyne, *Governmental Tort Liability: A Public Policy Prospectus,* 10 U.C.L.A. L. Rev. 463, 478-485. See also the criticism of the "governmental level versus operational level" test as applied in the Federal Tort Claims Act in *Dalehite* v. *United States* (1952) 346 U.S. 15 [97 L.Ed. 1427, 73 S.Ct. 956]; in *Indian Towing Co., Inc.* v. *United States,* 350 U.S. 61 [100 L.Ed. 48, 76 S.Ct. 122]; and in *Eastern Air Lines, Inc.* v. *Union Trust Co.,* 95 App. D.C. 189 [221 F.2d 62], affd. 350 U.S. 907 [100 L.Ed. 796, 76 S.Ct. 192]. (Peck, *The Federal Tort Claims Act, A Proposed Construction of the Discretionary Function Exception,* 31 Wash. L. Rev. 207.) The "governmental versus operational level" test, incidentally, notwithstanding the high authority from which it traces its origin, has not been mentioned in the post-California Tort Claims Act cases in California hereinafter to be reviewed. To us, similarly unconvincing is Judge Learned Hand's argument that "it is impossible to know whether the claim is well founded until the case has been tried," and that to require public officials to incur the risk of trial "would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." (*Gregoire* v. *Biddle* (2d Cir. 1949) 177 F.2d 579, 581; see Van Alstyne, *op cit.,* pp. 463, 478.)

ing section 820.2 the county claimed it was not liable since its sheriff in failing to warn was performing a discretionary act. even though that discretion may have been abused. We rejected that contention, ruling that when the sheriff promised to act he exercised a discretion but that after he had promised to warn he had exhausted the only discretion involved. In failing to *give* the warning he was, if the pleaded facts were proven, merely negligently omitting to perform an act voluntarily assumed. We also disallowed the county's argument that the county was protected (under § 815) by the rule that the entity has all defenses available to a private person. We held that a private person, voluntarily assuming a duty, must perform it non-negligently. (See *Indian Towing Co.* v. *United States,* 350 U.S. 61 [100 L.Ed. 48, 76 S.Ct. 122].)

The *Morgan* case was reviewed and distinguished by our Supreme Court in *Heieck & Moran* v. *City of Modesto,* 64 Cal.2d 229, 234 [49 Cal.Rptr. 377, 411 P.2d 105]. There the plaintiff had alleged that a city fire department, upon learning its own water supply had failed had negligently failed to summon the tank trucks of the county fire department. Plaintiff's property was damaged by fire. After stating the facts of the *Morgan* case, the court says (on p. 234) : ''In the present case it is not alleged that any city employee promised or represented that other assistance would be summoned when lack of water in the mains was discovered, and no duty to summon such assistance is either suggested or shown by plaintiff.''

Justice Burke, author of the *Heieck & Moran* decision, also, as presiding justice of Division Four of the Second District Court of Appeal, wrote the opinion of the court in *Glickman* v. *Glasner,* 230 Cal.App.2d 120 [40 Cal.Rptr. 719] (hearing by Supreme Court denied). There a statute required the state ''Kosher Food Law Representative'' to visit and inspect meat and poultry packers and markets offering kosher products for sale ''to assure that such products have been properly identified, labeled, segregated, advertised, and otherwise handled in a manner consistent with orthodox Hebrew religious ritual and custom'' and to report violations. Defendant rabbi-inspector was charged in the complaint with having libeled plaintiff, a kosher slaughterer, by maliciously publishing false reports that plaintiff's poultry was non-kosher to the end that he had been declared disqualified. A summary judgment for defendant was affirmed. The court held the defend-

ant's acts were discretionary. "Discretionary" acts were defined (on p. 125 of 230 Cal.App.2d) as those involving the exercise of judgment, including even those acts "incidental and collateral" to the performance of the principal purpose of a public employee's office.

In *Ne Casck* v. *City of Los Angeles* (1965) 233 Cal.App.2d 131 [43 Cal.Rptr. 294] (hearing by Supreme Court denied) the complaint, demurrers to which were sustained without leave to amend, alleged that defendant police officers, having arrested two persons known to be dangerous, negligently allowed them to escape. While the handcuffed men were running down the sidewalk, they collided with and injured the pedestrian-plaintiff. Judgment of dismissal was affirmed. The opinion, after stating the same rationale for the "exercise of discretion" immunity rule as we have quoted it (see footnote 2), states (on p. 138) : "While the negligent execution of a course of conduct previously decided on is certainly more 'ministerial' than the primary decision to engage in such conduct, we do not believe that the public policy which, we think, demands that the choice of method of keeping an arrest effective be subject to immunity, would be furthered by drawing so subtle a distinction. If zeal in making arrests is worthy of being encouraged by not making the deliberate choice of using minimal force subject to review by a judge or jury, this goal would be effectively frustrated by making the manner of executing the course chosen subject to judicial scrutiny in a civil suit for damages such as this one. We accomplish nothing by fanning the officer's ardor one moment and extinguishing it the next."

Since the case dealt specifically with the obligations of the police to restrain arrested persons and, as the court later pointed out, there is a section in the act, section 845.8, subdivision (b), *specifically* granting immunity both to the public entity and the public employee for an injury caused by an escaping prisoner, the portion of the opinion just quoted implying immunity from the negligent performance (or non-performance) of an-almost-ministerial operational function is dictum. The logic of the quoted statement is perfect—if the "dampen-the-ardor" rationale be followed to the letter. (See footnote 2.) By the same reasoning, however, *any* creation of liability in a public employee or his public employer for *any* negligent act or omission may be said to "dampen the ardor" of public workers. Yet in applying this finespun logic we must—if we are to permit any tort liability against public

employees—stop somewhere. And where *do* we stop? The holding of *Ne Casek* and of *Heieck & Moran* are both based upon specific immunities granted by legislative mandate: section 845.8 in *Ne Casek* and 850.2 and 850.4 in *Heieck & Moran*. No one doubts the power of the Legislature to enact immunities, and courts cannot challenge specific immunities when they are created by legislative mandate. No constitutional principle is involved. The case of *Glickman* v. *Glasner, supra,* is troublesome. No specific immunity appears to have been involved. The court based its holding upon the fact that the public employee was engaged in the exercise of a discretionary function. On the other hand, section 820.2 was not mentioned. The court did not consider whether the libel *"resulted from"* the exercise of a discretionary function. Neither did it consider any of the many cases which have construed the Federal Tort Claims Liability Act. (28 U.S.C.A., § 2680, subd. (a).)

Before turning to the latter, we note that neither legislative enactment (at least in § 820.2) nor the California cases cited, intended to overrule *Muskopf* v. *Corning Hospital Dist.,* 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], in its application to the facts there involved. That case was also a pleading case. The alleged negligence was by a hospital staff in treating a plaintiff-patient with a broken hip so that she fell, receiving further injury. The Supreme Court recognized (on pp. 220-221) that "Government officials are liable for the negligent performance of their ministerial duties [citations] but are not liable for their discretionary acts within the scope of their authority [citations], even if it is alleged that they acted maliciously [citations]." Since the court reversed the judgment of dismissal after demurrer sustained, it must be concluded either that it did not regard the negligence alleged necessarily to result from the violation of a discretionary function (although it certainly followed after one)—or that the court believed the injury was at a level of governmental performance where discretion was not the criteria. (See footnote 2.)

The Federal Tort Claims Act has been in effect since 1948. Section 2680, subdivision (a) thereof, (28 U.S.C.A.) is similar to our Government Code section 820.2 but distinguishable therefrom. Section 2680, subdivision (a), provides in part that the government is not liable for "Any claim based upon an act or omission of an employee of the Government . . . or based upon the exercise or performance or the failure to exer-

cise or perform a discretionary function or duty. . . .'' The distinction, of course, is the distinction between ''based upon'' as used in section 2680, subdivision (a), and ''resulting from'' as used in Government Code section 820.2. The phrase ''based upon the exercise . . . [of] a discretionary function or duty'' in section 2680 frequently has been court-construed. A comprehensive note in 99 American Law Reports 2d 1016 collects these cases and sets forth certain guidelines in the determination of whether a function is, or is not, discretionary. *Dalehite* v. *United States* (1952) 346 U.S. 15 [97 L.Ed. 1427, 73 S.Ct. 956] has been referred to as a leading case. In it an explosion of ammonium nitrate fertilizer occurred on shipboard while it was being loaded for export. The method of bagging and stowing the fertilizer had been established by officials of the U.S. Army's Bureau of Ordnance. The accident was held by a closely-divided court (four to three, with two justices not participating) to be within the ''discretionary function'' immunity. The result was reached by the majority by applying the planning-level versus operational-level test. The court stated (at p. 1444 of 97 L.Ed.): ''[T]he alleged 'negligence' does not subject the Government to liability. The decisions held culpable were all responsibly made at a planning rather than operational level and involved considerations more or less important to the practicability of the Government's fertilizer program.'' Three years after *Dalehite, supra,* in *Indian Towing Co.* v. *United States, supra* (1955) 350 U.S. 61 [100 L.Ed. 48, 76 S.Ct. 122], the United States Supreme Court (per Justice Frankfurter) expressly refused (on p. 53) to apply the Federal Tort Claims Act's discretionary act exclusion at the operational level. It held the government liable, pointing out that the very purpose of Congress in enacting the Tort Claims Act was to ''cut the ground from under'' the doctrine of sovereign immunity applied to the facts there involved. (See also *Eastern Air Lines, Inc.* v. *Union Trust Co.,* 95 App.D.C. 189 [221 F.2d 62], affd. 350 U.S. 907 [100 L.Ed. 796, 76 S.Ct. 192].)

Although the ''planning level versus operational level'' test was used by the United States Supreme Court in *Dalehite, supra,* and in *Indian Towing Co., supra,* another guideline conveniently referred to as ''subsequent negligence'' liability has been asserted in other cases cited in the American Law Reports note mentioned (99 A.L.R.2d 1025). It refers to

negligence which occurs *after* discretion has been exercised and holds that such negligence is not excused. Some of the cases cited refer to negligent acts after all discretion has been exhausted. That was the situation in *Morgan* v. *County of Yuba, supra,* 230 Cal.App.2d 938, 942.

*Costley* v. *United States* (5th Cir. 1950) 181 F.2d 723, involved the negligent act of a hospital operating team in substituting a harmful substance for that properly used in administering a spinal anesthetic to a woman during her confinement. The court held (on pp. 724-725): ''We think they were not exercising a discretionary function, because they had already exercised their discretion by admitting her [the patient] into the hospital, and once having admitted her and undertaken the delivery of her child, they were under a duty to attend and treat her. . . . [T]he hospital authorities no longer had any discretion to exercise with regard to whether she was to receive careful or negligent treatment. A duty arose at this point to treat her with the same care, skill, diligence, and ability, that would be owing by a private person or corporation under the same or similar circumstances.'' (In some respects the facts of the *Costley* case are similar to those alleged in the *Muskopf* case, *supra*.)

■ In the instant case the brief of respondents admits **Dr.** Fuller had already exercised discretion by agreeing to analyze the possibly ingested plant substance to determine its toxicity. This is admitted by respondents to be a service commonly rendered by the state. Under the rule stated in the *Costley* case, exercise-of-discretion had ended at that point and thereafter the inquiry would be limited to whether there had been an exercise of due care under a duty assumed. The rationale of the *Costley* rule is that government may, in its sole and uninhibited discretion, reasonably or arbitrarily (even maliciously) exercised, extend or withhold its services to its citizens, but once the determination has been made that a service will be furnished and the service is undertaken, then public policy demands (except when the Legislature specifically decrees otherwise) that government be held to the same standard of care the law requires of its private citizens in the performance of duties imposed by law or assumed. To us that seems a sounder policy than the ''dampen the ardor'' theory of governmental immunity. It also applies a test much more susceptible of ascertainability than the ''policy-making-level versus operational-level'' rule. (See footnote 2.)

Certainly it allows a greater predictability of decision.

Even the early cases, stating that the discretionary exclusion rule extends from origin through completion of any governmental activity, did not apply the rule literally. They recognize that every act performed by a human being involves the exercise of *some* discretion. *Ne Casek* v. *City of Los Angeles, supra,* 233 Cal.App.2d 131, refers to this. On page 135 the court says, quoting from *Ham* v. *County of Los Angeles,* 46 Cal.App. 148, 162 [189 P. 462] : " '[I]t would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail.' " (He who says discretion is not involved in driving a nail has either never driven one or has had a very sore thumb, a split board, or a bent nail as the price of attempting to do so.)

Section 820.2 of the Government Code is a section of general application. To apply it too literally in favor of granting immunity to public entities and employees would be to reinstate many of the injustices meant to be rectified by *Muskopf, supra.* The California Tort Claims Act was carefully drafted. Its draftsmen carefully preserved *specific* immunities. Sections 854.8, 850.2 and 850.4 are typical examples. The attempt to make section 820.2 a catchall section broadly encompassing every judgment exercised at every level would be—to borrow the language of Justice Frankfurter in *Indian Towing Co., supra,* (at p. 65 of 350 U.S.)—to make the act "self-defeating by covertly embedding the casuistries" of some of the pre-*Muskopf* cases.

This case must be reversed whatever rule is to be applied. Upon any theory it cannot be said at the pleading stage what type of functions respondents performed. Even an expert sometimes acts ministerially. The Attorney General conceded this at oral argument, stating that the surgeon who left a sponge in a wound after surgery would not be protected under the "discretionary exclusion" rule. In sending this case back to the trial court, however, we deem it our obligation to direct the trial court as to what criteria it should apply and we have done so. We have followed the rule of *Costley* v. *United States, supra* (181 F.2d 723).[3]

[3]In footnote 2 we have cited Professor Van Alstyne's article in 10 U.C.L.A. L. Rev. 463, 478, et seq., criticizing the "dampen the zeal" rule of immunity as applied to the public *entity.* The article suggests (on p. 485) : "The suggestion is that there should be no liability of the public entity, as a general rule, for reasonable mistake or error of its personnel, but that there ordinarily should be entity liability for negli-

Our holding is limited, of course, to the interpretation of section 820.2. As stated, specific immunities have been provided elsewhere in the 1963 California Tort Claims Act as regards certain governmental activities. We have adverted to some of them above. We recognize their unassailability. But section 820.2 is a *general immunity* section. It cannot be used as a crutch by the state to negate the case-made liability under *Muskopf, supra,* and statutory declarations of public-entity-liability since then.

### Re Claimed Immunity Under Section 855.4

Respondents contend they are also immune under section 855.4. That section is inapplicable. It applies to immunity from the exercise of discretionary acts in efforts to promote public health by preventing or controlling public disease. It has reference, for example, to the determination of whether or not to impose quarantines. (Van Alstyne, Cal. Gov. Tort Liability (Cont. Ed. Bar (1964)) p. 638, re § 855.4.) The acts charged here were not within the purview of that section. Moreover, it is interesting to note that Professor Van Alstyne recognizes, even under section 855.4, "that once the determination has been made there is no immunity from liability in carrying [the policy] out unless due care is exercised." (Van Alstyne, *op. cit.,* § 7.37, p. 321.)

### Re Claimed Immunity Under Section 855.6

Neither were the acts charged covered by the immunity created by section 855.6. That section refers to a failure to make, or inadequacy of, a physical or mental examination. If it is not obvious on the face of that section that it has no application to the facts of this case, it becomes obvious by reference to the legislative history. (See Van Alstyne, *op. cit.,* page 640, citing the California Law Revision Commission Comment; also Van Alstyne, *op cit.,* § 7.38, p. 322.)

### Re Claimed Immunity Under Section 818.6 and Section 821.4

Section 818.6 grants immunity from liability for the negligent inspection of private property to determine whether it constitutes a hazard to health or safety. Section 821.4 grants

---

gence. The supporting policy argument is that while citizens may be expected to assume the risk of injury from mistakes which occur when due care is employed, the risk from negligence is too great and hence should be borne by the enterprise as a whole." That was published in March 1963 before the enactment of the California Tort Claims Act later that same year. It is still apropos.

the same immunity to a public employee. The Legislative Committee Comment to said section notes that inspections such as those made of a building under construction are contemplated. Again it is obvious the sections are inapplicable. We entertain no belief plaintiffs claimed any property interest in the plant material possibly previously ingested by their deceased daughter, and certainly this ingested material when analyzed constituted no hazard.

The judgment is reversed.

Friedman, J., and Regan, J., concurred.

A petition for a rehearing was denied March 29, 1967, and respondents' petition for a hearing by the Supreme Court was denied May 4, 1967.