**SEBASTIAN INTERNATIONAL, INC., Plaintiff,**

v.

**Vincenzo RUSSOLILLO, an individual, et al., Defendants.**

**No. 00–03476 CM.**

United States District Court, C.D. California.

Sept. 13, 2001.

---

David H. Stern, Sonnenschein Nath & Rosenthal, Los Angeles, CA, William C. Conkle, John A. Conkle, Darren Marlowe, Conkle & Olesten, Santa Monica, CA, Thomas J. Nolan, Joanne E. Caruso, Howrey Simon Arnold & White, Los Angeles, CA, for Sebastian International Inc.

Norman H. Levine, Alison F. Clarke, Michelle M. Lynn, Suann Caulfield MacIsaac, Greenberg Glusker Fields Claman Machtinger & Kinsella, Los Angeles, CA, Linda K. Netsch, Claman & Machtinger, Los Angeles, CA, for Roger Ladd, Damian Christopher, Inc.

Robert W. Hodges, Melodie K. Larsen, J. Larson Jaenicke, Rintala Smoot Jaenicke & Rees, Los Angeles, CA, for Qualify King Distributors Inc.

Jeffrey A. LeVee, Amy A. Stahos, Eric Patrick Enson, Jones Day Reavis & Pogue, Los Angeles, CA, Darryl E. Towell, Jones Day Reavis & Pogue, Irvine, CA, for TSA Distributing Inc., Ken Teepe.

Luis A. Carrillo, Luis A. Carrillo Law Offices, Montebello, CA, Steven H. Hibbe, Miami, FL, for Trapeza Overseas Inc., Jose I. Arguelles.

Richard G. Simon, Richard G. Simon Law Office, San Bernardino, CA, for Farshid Ben-Cohen.

Eric Shih, Mark R. Bateman, Charles S. Barquist, Mary F. Panetta, Morrison & Foerster, Los Angeles, CA, for Phar-Mor Inc.

Steven M. Perry, Devon A. Gold, Munger Tolles & Olsen, Los Angeles, CA, for Randalls Food Markets Inc.

Dennis G. Martin, Willmore F. Holbrow, III, Blakely Sokoloff Taylor & Zafman, Los Angeles, CA, John Emmett, John Emmett Law Offices, Dallas, TX, for Nortex Drug Distributors Inc.

Roger B. Coven, Paul C. Workman, Holland & Knight, Los Angeles, CA, for Dollars Spray Aerosols.

Lee I. Petersil, Morris Polich & Purdy, Los Angeles, CA, Eric H. Vance, Dale M. Heist, Camille M. Miller, Woodcock Wash-

burn Kurtz Mackiewicz & Norris, Philadelphia, PA, for Superbox Aerosols.

Edmund J. Towle, III, Michael C. Denison, Towle Denison Smith & Tavera, Los Angeles, CA, for Tosva Aerosol.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT RITE AID CORPORATION'S AND CVS CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT

MORENO, District Judge.

Present before the Court is Defendant Rite Aid Corporation's and CVS Corporation's Motion for Partial Summary Judgment. Having reviewed the parties' papers, all evidence submitted therewith, and after hearing oral argument, the Court 1) *denies* summary judgment of Plaintiff's claim for intentional interference with contractual relations and conspiracy, and 2) *grants* summary judgment of Plaintiff's claim for intentional interference with prospective economic advantage and conspiracy.

I

*Factual Background*

Plaintiff Sebastian International ("Sebastian" or "Plaintiff"), a California corporation, is a designer and distributor of professional hair care products including hair sprays, shampoos, conditioners, coloring gels, and mousse. Sebastian does not distribute its products through retailers. Instead, Sebastian produces its products for use and sale at hair care salons and beauty schools. As part of this "salon-only" distribution scheme, salons and schools are contractually obligated to sell Sebastian products only to consumer clientele, and not to other retailers or distributors. Sebastian's more popular products bear a holographic label which is used to identify and track the product.

Despite the contractual limitations imposed on salons, Sebastian products are sold by retailers. This is a result of so-called product diversion, whereby merchandise intended for sale and use in salons is diverted and sold to drug stores and supermarkets.

Although Sebastian has brought claims against several retailers and distributors of its products, this Motion for Partial Summary Judgment is brought by Defendants CVS ("CVS") and Rite Aid ("Rite Aid") (collectively "Defendants"). On several occasions, Sebastian has notified both Defendants of the existence and substance of its contracts with distributors restricting the sale of its products to salons. Defendants were also informed that Sebastian had started using holographic labels on its products to prevent diversion and facilitate tracking, and that these holographic labels were being intentionally removed or "decoded" in order to thwart attempts by Sebastian to locate the source of diversion. At the end of 1999, Sebastian notified Defendants of a scheme to market counterfeit products and warned Defendants against selling such products. Sebastian alleges that despite these warnings, Defendants have continued to stock and sell both diverted, altered and counterfeit products. Sebastian alleges that Defendants continue to sell these products despite knowledge that such sales disrupt its contractual relations and prospective business relations with the distributors and salons with which it has "salon-only" distribution agreements.

Also relevant for purposes of this motion are Sebastian's allegations concerning Defendant Quality King Distributors, Inc. ("Quality King"). Quality King is a distributor of consumer products, including hair care products manufactured and sold by Sebastian. In addition to distributors, Quality King also sells diverted Sebastian

products through its web-site. Sebastian alleges that Quality King induces distributors of Sebastian products to defraud Sebastian by breaching their agreements only to sell to consumer clientele. In furtherance of its diversion scheme, Sebastian alleges, Quality King has created phony distributorships, advanced money to fronts for purchase of diverted Sebastian products, and removed Sebastian's holographic labels. Sebastian further alleges that Quality King received shipments of counterfeit Sebastian products imported from Italy and supplied those products to retailers.

Sebastian claims that Quality King is the primary supplier of Sebastian products to Defendants and that most of the Sebastian products supplied to Defendants have been altered by having their holographs removed in violation of California law. Sebastian also claims that these products were obtained on behalf of Quality King and supplied to Defendants by tortious and unlawful means. Sebastian alleges that Quality King's stocking agreements and indemnification agreements with Defendants (which indemnify CVS and Rite Aid from "alternate source" litigation), and the continued sale of Sebastian's products despite notification that these products have been altered and diverted, supports the inference that Defendants and Quality King have formed a conspiracy with the object of inducing the breach of Sebastian's contractual and prospective economic arrangements.

## II

### Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). In a trilogy of 1986 cases, the Supreme Court clarified the applicable standards for summary judgment. *See Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electrical Industry Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. *Id.* at 248, 106 S.Ct. 2505. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative, admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The moving party need not disprove the other party's case. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In assessing whether the non-moving party has raised a genuine issue, its evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress and Company,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d

142 (1970)). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact. *Id.* at 252, 106 S.Ct. 2505. As the Supreme Court explained in *Matsushita,*

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Id.,* 475 U.S. at 586–87, 106 S.Ct. 1348.

■ To be admissible for purposes of summary judgment, declarations or affidavits must be based on personal knowledge, must set forth "such facts as would be admissible in evidence," and must show that the declarant or affiant is competent to testify concerning the facts at issue. Fed.R.Civ.P. 56(e). Declarations on information and belief are insufficient to establish a factual dispute for purposes of summary judgment. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

Summary judgment is not treated as "a disfavored procedural shortcut" but as "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III.

### *Analysis*

A. *Intentional Interference With Contractual Relations.*

■ In order to prove the tort of intentional interference with contractual relations, the California Supreme Court has made clear the basic elements that plaintiff must establish: (1) it has a valid and existing contract with a third party; (2) defendants had knowledge of the contract; (3) defendants committed an intentional act designed to induce a breach or disrupt the contractual relationship; (4) actual breach or disruption of the contract relationship occurred; and (5) damages were suffered as a result. *Quelimane Co. Inc. v. Stewart Title Guaranty Co.,* 19 Cal.4th 26, 55, 77 Cal.Rptr.2d 709, 960 P.2d 513 (1998); *Pacific Gas & Electric Co. v. Bear Stearns & Co.,* 50 Cal.3d 1118, 1126, 270 Cal.Rptr. 1, 791 P.2d 587 (1990). The parties differ, however, on the correct interpretation of several of these elements.

1. *Knowledge of the contracts between Plaintiff and the third party.*

Defendants argue that in order to prove that "defendants have knowledge of the contracts between Plaintiff and the third party," Plaintiff must identify the specific contractual relations that have allegedly been disrupted. Plaintiff disagrees, arguing that while Defendants must know of the existence of the contracts, there is no requirement that they know the specific identities of the contracting parties.

In support of their argument, Plaintiff relies on *Ramona Manor Convalescent Hosp. v. Care Enterprises,* 177 Cal.App.3d 1120, 225 Cal.Rptr. 120 (1986), in which the court upheld an interference with contract claim even though the Defendant never knew with whom the Plaintiff had contracted: "The rule does not require ... that the person who loses the performance of the contract as a result of the conduct of the actor shall be specifically mentioned by name. It is sufficient that he is identified in some manner...." *Id.* at 1133, 225 Cal. Rptr. 120.

■ This Court agrees that in order to satisfy the second element of this tort under California law, the Plaintiff does not have to identify the specific contractual relations which have allegedly been disrupted. Contrary to the Defendants' in-

terpretation, it seems that the second element of this intentional tort relates to the state of mind of the defendant at the time that the alleged tort occurred. If a potential defendant was completely unaware of contractual relations with a third party, then it would be impossible to infer any intent to interfere on the defendant's part. However, such intent can certainly be inferred if the defendant knows that contractual relations with a third party exist, but does not know the specific identity of the contractual party.

■ Therefore, in this case, the Plaintiff has offered sufficient evidence to support the second element. It is undisputed that Sebastian informed both CVS and Rite Aid of their "salon-only" distribution scheme on numerous occasions, and that it believed that the continued sale of "diverted" or unauthorized hair products by the Defendants was disrupting its contractual relationships with both its salons and distributors. Plaintiff's Exs. 93, 193–200. Sebastian provided Defendants with a representative list of salons and distributors with whom Sebastian has contractual relations (Defendants' Exs. 3, 4), as well as specific information regarding contracts with two salons involved in diverting products to Defendants' supplier Quality King. Plaintiff's Statement of Genuine Issues of Material Fact, ¶ 7. The Court finds that this evidence supports the Plaintiff's assertion that the Defendants were "on notice" as to the class of contracting salons and distributors with whom Sebastian has contractual relations, and that it can be reasonably inferred from such notice that Defendants had knowledge of the class of contractual relations potentially disrupted by their actions.[1] Therefore, the Court finds that there is sufficient evidence to support the second element of Plaintiff's

claim for interference with contractual relations.

2. *Intentional action to induce a breach or disrupt Sebastian's contracts and actual breach or disruption*

In support of their motion, Defendants also challenge both the legal and factual grounds upon which the Plaintiff alleges the third and fourth elements of their intentional interference with contract claim, that "defendants committed an intentional act designed to induce a breach or disrupt the contractual relationship" and that "actual breach or disruption of the contract relationship occurred." *Quelimane*, 19 Cal.4th at 55, 77 Cal.Rptr.2d 709, 960 P.2d 513.

■ Before addressing the sufficiency of evidence offered by the Plaintiff, it is necessary to resolve the dispute between the parties as to the legal requirements of these elements. First, there is disagreement between the parties as to what constitutes "a breach or disruption of the contractual relationship." While Defendants expend much of the energy in their Motion arguing that Plaintiffs offer no evidence linking their actions, directly or indirectly, to any "breach" of existing contractual relations, the California courts have made clear that "interference" does not necessarily require evidence of any "breach." In *Ramona*, the court noted that the California Supreme Court had previously expanded the tort of inducing breach of contract "to permit liability where the defendant does not literally induce a breach of contract, but makes plaintiff's performance of the contract 'more expensive or burdensome.'" *Ramona*, 177 Cal.App.3d at 1131, 225 Cal.Rptr.

---

1. The Court also acknowledges Plaintiff's argument that the lack of more specific information regarding specific contractual relations that have been disrupted may ultimately be found to be related to the conduct of CVS, Rite Aid and co-defendant Quality King.

120 (quoting *Lipman v. Brisbane Elementary Sch. Dist.*, 55 Cal.2d 224, 232, 11 Cal.Rptr. 97, 359 P.2d 465 (1961)). Therefore, in order to satisfy this element, Plaintiffs have to offer credible evidence that Defendants intentional actions resulted in greater expense or burden on the performance of its contractual obligations with third parties.

The second area of disagreement relates to the definition of "intentional action" in the second element of the tort. Defendants argue that Plaintiffs must offer evidence of specific intent on the part of CVS and Rite Aid to induce a breach or disrupt Sebastian's contractual relations. They offer several cases in support of their legal interpretation, in which courts have held that in order to prevail, defendants must have specifically intended to cause a breach of contractual relations. *See De Voto v. Pacific Fidelity Life Ins. Co.*, 618 F.2d 1340, 1347 (9th Cir.1980), *cert. denied*, 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980); *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*, 36 Cal.3d 752, 765, 206 Cal.Rptr. 354, 686 P.2d 1158 (1985). However, in *Quelimane*, a more recent case than those cited by the Defendants, the California Supreme Court relied on the Restatement Second of Torts, to interpret "intentional action" to include situations

> in which the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action. The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire, but known to him to be a necessary consequence of his action.

*Quelimane*, 19 Cal.4th at 56, 77 Cal. Rptr.2d 709, 960 P.2d 513, (quoting comment j to Section 766 of the Restatement Second of Torts).

Taking these California Supreme Court's interpretations together, this Court concludes that in order to prove their claim for intentional interference with contractual relations, Plaintiffs must show that CVS and Rite Aid knew with at least "substantial certainty" that a "necessary consequence" of their actions would be that Sebastian's performance of their contractual relations with distributors and salons would be made more "expensive or burdensome."

Having established the applicable legal standard, it is necessary to evaluate whether the evidence put forward by the Plaintiff is sufficient to create a triable issue as to these elements. Temporarily putting aside Plaintiff's conspiracy theories of liability, it is Plaintiff's contention that given their numerous notices to Rite Aid and CVS of its "salon-only" distribution scheme and specific information about illegally decoded, altered and counterfeit products, Rite Aid and CVS knew with "substantial certainty" that the "necessary consequence", of their continued sale of these products was the "interference" with Sebastian's contractual relations.

In support of their claim, Sebastian offers copies of numerous letters sent to CVS and Rite Aid informing them that their sales of these products were unauthorized, that the products may have been illegally obtained by their supplier, and that the products may have been altered or had their identifying holographs removed. *See e.g.,* Plaintiff's Exs. 193–200. Sebastian also offers the declarations of several individuals who purchased "altered" and "counterfeit" Sebastian products from CVS and Rite Aid after these letters had been acknowledged by Defendants counsel. *See* Riedel Decl.; Wickersham Decl.; Sarmiento Decl. Finally, although offered by Plaintiffs to support its conspiracy theory of liability, Defendants'

"upstream" indemnification agreement with Quality King (in which the latter, a primary supplier, agreed to indemnify against "alternate source" litigation including tortious interference with contract claims) could also be offered as circumstantial evidence that Defendants were aware that their continued sale of altered and counterfeit products would disrupt Sebastian's contracts with its salons and distributors. Plaintiff's Ex. 12.

■ While Defendants suggest that they could not have known with "substantial certainty" that interference was a "necessary consequence" because Sebastian's distribution scheme was not actually "exclusive," this Court finds that Sebastian has offered sufficient direct and circumstantial evidence that such a determination should be made by the trier of fact, rather than by this Court on a Motion for Partial Summary Judgment.[2]

This Court also rejects Defendants assertion that Plaintiff has offered insufficient evidence to support its claim that Defendants' actions made performance of Sebastian's contracts more burdensome or expensive. Plaintiff argues, among other things, that the sale of diverted and altered products by CVS and Rite Aid makes it more difficult, burdensome and

expensive to perform their contracts because it impedes its ability to locate and eliminate the source of diverted products, and to determine whether to continue contractual relations with a particular salon. Riedel Decl., ¶¶ 4–11. Defendants claim that under the terms of Sebastian's contract with salons and distributors, Sebastian has no affirmative duty to discover whether salons or distributors are diverting products, and thus cannot claim that Defendants' actions make performance more expensive or burdensome. However, according to a provision of Sebastian's standard contract with salons and distributors, Sebastian is obligated to:

> Refrain from selling, distributing or consigning any of the SEBASTIAN products ... to department, drug, food and variety stores or any unauthorized outlet as designated by SEBASTIAN.

Plaintiff's Exhibit 12.

While Defendant's interpretation of this provision is that it does not imposes on Sebastian an affirmative duty to investigate diversion of its products to an unauthorized retailer or distributor, this Court is unwilling to infer such an interpretation in light of Sebastian's representations. The Court believes that the determination of whether performance of Sebastian's con-

---

**2.** Defendants rely on a number of cases in which other courts outside of California have found knowledge of the manufacturers exclusive distribution scheme insufficient to support allegations that those defendants "induced" any breach. *See John Paul Mitchell Systems v. Quality King Distributors, Inc.,* 106 F.Supp.2d 462, 477 (S.D.N.Y.2000); *John Paul Mitchell Systems v. Randalls Food Markets,* 17 S.W.3d 721 (2000); *John Paul Mitchell Systems v. Pete–N–Larry's,* 862 F.Supp. 1020, 1029 (W.D.N.Y.1994); *Matrix Essentials v. Cosmetic Gallery,* 870 F.Supp. 1237 (D.N.J.1994), *aff'd* 85 F.3d 612 (3rd Cir.1996). In all of these cases liability hinged upon whether imputed knowledge was sufficient to support an allegation defendant "induced" a breach of contract, and not the broader defi-

nition of "disruption" of contractual relations adopted by the California courts as discussed above. Furthermore none of these cases apply the "necessary consequence" standard adopted by the California courts in determining "intentional" conduct. Finally, the basis of these decisions were defendant's knowledge of the manufacturers distribution scheme alone. In this case, it is undisputed that Sebastian not only provided notice to Defendants of the exclusive nature of its distribution scheme, but also provided specific information suggesting Sebastian products sold by CVS and Rite Aid were either altered in violation of California law or were in fact counterfeit—putting them on further notice that these products had been diverted in a way that could disrupt contractual relations.

tractual obligation is made more expensive or burdensome is also an issue that should be determined by the ultimate trier of fact in this case.

For these reasons, the Court finds that Plaintiff has provided enough factual evidence to preclude summary judgment of Plaintiff's intentional interference with contractual relations claim.

## B. Sebastian's Conspiracy Theory of Tortious Interference with Contractual Relations.

As an alternative theory of liability under this claim, Plaintiff alleges that Defendants CVS and Rite Aid are part of a conspiracy with the object of "obtaining Sebastian products from parties to Sebastian's 'salon-only' agreements for ultimate sale to consumers in mass merchandise stores." Plaintiff's Opposition, 14. Plaintiff alleges that the objects of this conspiracy "have been accomplished by use of torts such as fraud, commercial bribery and product decoding, each an independent wrongful act." *Id.*

 Unlike criminal conspiracy, civil conspiracy is not a separate tort action. Rather, it is an alternative theory of liability under which liability may be imposed "on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its interpretation." *Kidron v. Movie Acquisition Corp.,* 40 Cal.App.4th 1571, 1581, 47 Cal.Rptr.2d 752 (1995) (internal citations omitted). In order to make such a claim, the plaintiff is required to provide evidence of (1) the formation and operation of the conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damages arising from the wrongful conduct. *Id.*

 The cornerstone of any conspiracy is an agreement between two or more parties "to a common plan or design to commit a tortious act." *Id.* California law

makes clear, however, that knowledge alone of tortious conduct is insufficient to prove a conspiracy agreement. *Id.* at 1582, 47 Cal.Rptr.2d 752 ("[A]ctual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim. Knowledge of the planned tort must be combined with intent to aid in its commission."). Furthermore, as a passage relied upon by the Plaintiff makes clear: "An entity that engages in legitimate business with a party that is acting tortiously cannot be deemed a co-conspirator, absent clear evidence of an agreement to join in the tortious conduct." *Id.* at 1571, 47 Cal.Rptr.2d 752; *See also Harris v. Capitol Records Corp.,* 64 Cal.2d 454, 50 Cal.Rptr. 539, 413 P.2d 139 (1966).

In support of its conspiracy theory, Plaintiff offers evidence of tortious and criminal conduct on the part of individuals alleged to have supplied Sebastian products to Quality King, a supplier of Rite Aid and CVS. Piccirillo Secl., ¶¶ 2–8, J Conkle Decl., ¶¶ 2–4; Riedel Decl. ¶¶ 25–35; Hampton Decl., ¶¶ 11 and 16, Plaintiff's Exs. 14, 184, 185, 190. Plaintiff offers no direct evidence of any agreement between the Defendants, Quality King and these individuals involving any plan to commit tortious acts, nor any evidence of an direct action by Defendants in furtherance of the "wrongful acts" alleged to have been carried out by its supplier's agents. Rather, as circumstantial evidence Plaintiff alleges that based on its own investigation, 95% of Defendants' Sebastian products are provided by Quality King, and that a similar percentage have had their codes altered or holograms removed. Wickersham Decl. ¶ 13. Plaintiff also offers as circumstantial evidence Quality King's stocking agreement and its indemnification agreement, which indemnifies Defendants from "alternate source" suits such as this one. Plaintiff's Ex. 12.

Plaintiff alleges that although they have no evidence of a specific agreement between Defendants and Quality King to commit the described 'wrongful acts' and divert Sebastian products, such an agreement can be inferred from the circumstantial evidence described above. Defendants respond that Plaintiffs offer nothing more than evidence of a standard commercial relationship between the two parties, and no evidence that Defendants participated or agreed to the commission of any of the torts by Quality King's suppliers, nor any evidence that Defendants even knew such torts were being committed.

 Although there is often little evidence of an explicit agreement in conspiracy case, this Court believes that Plaintiff has offered particularly weak evidence to support its alternative theory of conspiracy liability. However, the Court believes that given its decision to deny Plaintiff's summary judgment on the tortious interference with contract claim, it is appropriate that Plaintiff be given the opportunity to argue this alternative theory of liability to the jury.

C. *Intentional Interference with Competitive Advantage.*

 It appears that Plaintiff's claim that Defendants committed the tort of intentional interference with competitive advantage is offered in the alternative to its tortious interference with contractual relations claim—Plaintiff offers no additional evidence to support this claim. The elements of these torts are identical, except that interference with competitive advantage requires that the defendant's conduct is also "wrongful." *Della Penna v. Toyota Motor Sales U.S.A. Inc.*, 11 Cal.4th 376, 392–93, 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995).

 In this case, however, we need not address whether there is sufficient evidence offered by Plaintiff to support this "wrongfulness" requirement. The tort of intentional interference with prospective economic advantage "protects nonformalized or anticipated business relationships which are reasonably certain to occur, but which are nonetheless prospective." *PMC, Inc. v. Saban Entertainment, Inc.*, 45 Cal.App.4th 579, 601, 52 Cal.Rptr.2d 877 (1996). While it is true, as Plaintiff suggests, that the tort has been applied where existing contracts have been found to be unenforceable, no such claim is made in this case by either party. *Id.* Rather, Defendants argue that Sebastian's contractual relations have not been alleged with sufficient specificity to support their claim—an argument that has been rejected by this Court. As Plaintiff offers no evidence of unenforceable contracts, nor of any additional prospective business relations that have been disrupted, this Court finds that there is insufficient evidence for this claim.

### IV.

### *Conclusion*

The Court finds that because Plaintiff offers enough evidence to create a triable issue as to whether a "necessary consequence" of Defendants' actions was to make performance of their contractual obligations more expensive and burdensome, Defendants' Motion for Summary Judgment on the claim for intentional interference with contractual relations is *denied.* However, Plaintiff offers insufficient evidence to support its claim for intentional interference with prospective economic advantage. Therefore, Defendants' motion for summary judgment of this claim is *granted.*

IT IS SO ORDERED.